COMMONWEALTH *vs.* JOSE RODRIGUEZ.

Norfolk. April 3, 1979. — June 21, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, LIACOS, & ABRAMS, JJ.

*Identification. Practice, Criminal,* Instructions to jury, View. *Constitutional Law,* Search and seizure, Assistance of counsel. *Search and Seizure,* Warrant. *Evidence,* Relevancy, Prior inconsistent statement, Photograph.

Where a defendant charged with assault and battery with a dangerous weapon and forcible rape maintained throughout his trial that the victim was honestly mistaken in her identification of him but did not dispute the facts and details of the assault and rape, the judge erred in refusing to instruct the jury as to the possibility of mistaken identification and in placing undue emphasis on the credibility of the defendant. [301-302]

Where items seized from a defendant's apartment were not described in a search warrant and the Commonwealth failed to show a nexus between the items and the crime of which the defendant was suspected, the items should have been suppressed. [302-304]

Where in a hearing on a defendant's motion to suppress there was evidence that the ground at the scene of the crime was wet from previous rain but there was no testimony that a pair of denim pants seized in a search of the defendant's room was damp or muddy and the pants had not been described in the search warrant, the case was remanded for limited findings of fact on the issue whether the judge was aware of the muddy condition of the pants from evidence presented at the hearing. [304-305]

For the reasons stated in *Commonwealth* v. *Rodriguez*, 6 Mass. App. Ct. 738 (1978), there was no constitutional infirmity in certain pretrial identification procedures employed by the police in connection with a criminal case. [305-306]

A defendant who claimed that, prior to a probable cause hearing, the police told his counsel that the victim had previously made a positive identification of the defendant, which she had not done, was entitled to a hearing as to whether his representation was hampered by a material misstatement made by the police. [306-307]

The judge at a criminal trial did not abuse his discretion in denying the defendant's motion for a view. [307]

At a criminal trial at which identification evidence was admitted, the judge erred in excluding evidence as to the pretrial identification procedures employed by the police. [308]

At a criminal trial at which a substantial portion of the Commonwealth's case consisted of physical evidence implicating the defendant, the judge erred in excluding evidence as to alleged inadequacies in the tests performed by the Commonwealth's experts and the existence of more reliable tests, not performed by those experts, which might have exonerated the defendant. [308]

The judge at a criminal trial erred in denying the defendant's motion that the stenographer at the probable cause hearing be called to testify to a prior inconsistent statement made by the victim even though the defense counsel's assistant at the probable cause hearing was available and capable of testifying. [309]

At a criminal trial, the defendant was entitled to have objectionable material on mugshots used in identifying the defendant obscured or removed before they were admitted in evidence. [309]

INDICTMENTS found and returned in the Superior Court on January 6, 1977.

The cases were tried before *Irwin*, J.

After review by the Appeals Court, the Supreme Judicial Court granted requests for leave to obtain further appellate review.

*Eric D. Blumenson* for the defendant.

*Charles J. Hely*, Assistant District Attorney (*Sydney Hanlon*, Assistant District Attorney, with him) for the Commonwealth.

HENNESSEY, C.J. The defendant was convicted by a Superior Court jury of assault and battery with a dangerous weapon and forcible rape. Prior to trial, the defendant moved to suppress certain evidence on the ground that it was obtained during an illegal search and seizure. He also moved to suppress both in-court and out-of-court identifications of himself by the victim on the ground that the pretrial identification procedures were unnecessarily suggestive. At the close of the hearings, the trial judge denied both motions. After entry of the verdicts, and on his own motion, the judge ordered the defendant committed to the treatment center at Bridgewater State Hospital for a determination as to sexual dangerousness. See G. L. c. 123A, § 4. At a subsequent Superior Court hearing, the defendant was found sexually dangerous and committed to the treatment center for an indeterminate period of from one day to life. See G. L. c. 123A, § 5.

The defendant appealed both the determination that he is sexually dangerous and his convictions on the two indictments. This court ordered direct appellate review of the former issue and affirmed, contingent on affirmance of the criminal convictions. *Commonwealth* v. *Rodriguez*, 376 Mass. 632 (1978). The Appeals Court reversed the convictions, citing prejudicial error in a portion of the judge's charge. That court also ordered that a new hearing be held on the defendant's motion to suppress items obtained during the search of his apartment by the police. *Commonwealth* v. *Rodriguez*, 6 Mass. App. Ct. 738 (1978). We granted the parties' applications for further appellate review.[1]

_____

[1] The Commonwealth filed an application for further appellate review of only those issues that formed the basis of the Appeals Court's reversal. The defendant opposed the Commonwealth's application, but asked that we review the entire case, in the event that we reviewed

In this appeal, we are asked to decide whether the judge erred in (1) declining to instruct the jury on the possibility of mistaken identification, (2) denying the defendant's motions to suppress, and (3) making certain evidentiary rulings at trial. We are substantially in agreement with the results reached by the Appeals Court. However, we extend our opinion to include additional comments on several of the many hundreds of exceptions and motions offered by the defense. Many of these were of little substance, which obviously made this trial difficult for the judge to conduct with fairness. We conclude that the judge erred in instructing the jury and in denying the defendant's motion to suppress all but one item, and possibly two items, seized during the search of his apartment. For reasons presented *infra*, we remand the case to the Superior Court for limited findings of fact as to the second item. We also conclude that the defendant is entitled to a partial new hearing on his motion to suppress those identifications that occurred shortly before his probable cause hearing and at the probable cause hearing itself. This new hearing shall be confined to the issue whether the police interfered impermissibly with the defendant's right to counsel at those times. Finally, in the interests of assuring the defendant a fair second trial and hopefully avoiding another appeal, we shall discuss those evidentiary matters that raise substantial questions of error and that are likely to recur.

We summarize the facts briefly as follows. On September 27, 1976, around 11 P.M., the victim was walking from an MBTA station in Brookline to the single-family dwelling in which she lived. She soon became aware of being followed. Initially, she could see only the man's general build and hairstyle, and the type of jacket that he was wearing. However, after a few minutes, he called out, and she turned around to ask what she could do for him. While pretending to ask for directions, he walked toward

---

any part of it at all. We have decided to review the entire case and have structured our opinion in accordance with that decision.

her — a distance of approximately ten feet. When he arrived within a few feet of her, he thrust a broken bottle under her throat, turned her around, pushed her up a driveway into a backyard, and raped her. The victim's only opportunity to view her assailant occurred during their brief conversation. At the time, they were standing between two street lights placed approximately one-half block apart. A nearby porch light and lights from nearby homes provided the only additional illumination.

The victim ran home shortly after her assailant departed, and someone there immediately called the police. When the police arrived, the victim gave them a description of the man's skin color, build, height, hairstyle, mustache, glasses, and jacket, and described him as being possibly Hispanic. The police showed the victim an array of eight photographs, and she chose one of the defendant as most resembling her attacker. A second attempt to secure an identification from substantially the same array of photographs was made the next morning and yielded the same result. The victim's first positive identification of the defendant came approximately one month later, while he was entering the court room on the morning of the probable cause hearing. She made positive identifications of the defendant at that hearing and at trial.

In addition to the victim's identifications, the Commonwealth offered certain other evidence against the defendant at trial. The evidence consisted primarily of (1) a jacket, which matched the victim's description of that worn by her assailant, found by the police during their search of the defendant's apartment, (2) a pair of denim pants, the knees of which were wet and muddy, also found during the search of the defendant's apartment, (3) expert testimony that the soil on the denim pants was consistent with a sample taken from the backyard in which the victim was raped,[2] (4) expert testimony that there were

---

[2] On cross-examination the witness conceded that the soil was of a type that could be found in most lawns throughout the country.

human bloodstains on the jacket, but that the blood had not been typed,[3] and (5) testimony that the color of certain hairs found in the underpants worn by the defendant on the morning after the rape was consistent with a sample obtained from the victim and inconsistent with a sample of his own.

The defendant took the stand and testified to an alibi. He also testified to what might be viewed as innocent explanations of the physical evidence against him. It should be emphasized that the facts and details of the assault and rape went undisputed by the defendant. He simply claimed that the victim was mistaken in identifying him as her assailant and that her mistake stemmed from impermissibly suggestive procedures employed by the police.

## I. INSTRUCTIONS TO THE JURY.

The defendant requested that the jury be instructed to take into account the possibility of mistaken identification in determining whether the Commonwealth had proved his guilt beyond a reasonable doubt. Specifically, the defendant asked for instructions concerning the victim's opportunity to observe her assailant, the length of her observation and the circumstances surrounding it, the time lapse between the assaults and the date of the probable cause hearing, the police procedures employed to obtain the identifications, and the possibility that the victim's memory had deteriorated with the passage of time. None of these instructions was given, either as requested or in substance. Instead, the judge focused exclusively on those factors pertaining to witness credibility, which have to do with honesty and bias. His instructions on the issue are set out in full in the decision of the Appeals Court.

---

[3] The defendant offered evidence that the blood was of two types, one of which was inconsistent with that of both the victim and the defendant.

We conclude, as did the Appeals Court, that there was error in the judge's instructions, and agree with the reasons set out at length in the Appeals Court decision. See *Commonwealth* v. *Rodriguez*, 6 Mass. App. Ct. 738, 742-744 (1978). Although the judge gave detailed instructions to the jury on the subject of "how do we decide who[m] we believe," he failed entirely to mention that the victim might honestly have been mistaken in her identification of the defendant. This tended at least to submerge one of the crucial issues in the case, if not to rob the defendant of his defense entirely. Moreover, the instructions taken as a whole placed undue emphasis on the credibility of the defendant, who the Commonwealth maintained had been lying throughout. We add that, although we predicate our finding of error on the fact that the instructions given were one-sided and incomplete, a defendant who fairly raises the issue of mistaken identification might well be entitled to instructions of the type here requested. The Court of Appeals for the District of Columbia Circuit intimated as much in *United States* v. *Telfaire*, 469 F.2d 552 (D.C. Cir. 1972), and we are inclined to think that the more enlightened rule. We have set out the model instructions proposed in that case in the appendix to this opinion.

## II. THE MOTIONS TO SUPPRESS.

A. *Evidence seized from the defendant's apartment.* On the morning after the rape, the police obtained a warrant authorizing a search of the defendant's apartment. The items listed in the warrant were a Boston University identification card, jackknife, set of keys, pair of corduroy pants, and belt with a brass buckle (all of which belonged to the victim), a dark blue or black leather jacket (described by the victim as having been worn by her assailant), and a broken end of a bottle. The items seized by the police were a pair of brown cord pants, two pair of denim pants (one of which had mud on the cuffs and knees), a

tan shirt, a bracelet, four bottle caps, and a green suede jacket. The defendant moved unsuccessfully to suppress these items, arguing that they were not listed in the warrant and that the police lacked probable cause to believe them to be connected to the crime of which the defendant was suspected. The Appeals Court reversed and ordered a new hearing on the grounds that the judge made no meaningful findings of fact and that a review of the transcript and the judge's findings revealed some measure of confusion as to the parties' respective burdens of proof. *Commonwealth* v. *Rodriguez*, 6 Mass. App. Ct. at 746 app. B-1. We agree that the denial of the defendant's motion should be reversed, except with respect to the green suede jacket and, possibly, the muddy denim pants. However, we do not think that a new hearing is in order.

Searches and seizures conducted outside the scope of valid warrants are presumed to be unreasonable. In such circumstances, the burden is on the Commonwealth to show that the search or seizure falls within a narrow class of permissible exceptions. *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 57 (1974). *Chimel* v. *California*, 395 U.S. 752, 762 (1969). In *Commonwealth* v. *Bond*, 375 Mass. 201, 206 (1978), we stated that "in the process of a continuing search directed to finding the designated materials . . . the officers could seize articles 'in plain view.' By that somewhat misleading expression is meant articles which are come by 'inadvertently' — without particular design — and which, on being discovered, are reasonably believed by the officers to be connected with criminal activity" (citation omitted). We went on to state in that decision that, unlike contraband, and fruits or instrumentalities of crime, " '[m]ere evidence' inadvertently found . . . may be seized only if the officers recognize it to be plausibly related as proof to criminal activity of which they were already aware" (citation omitted). *Id.* See *Andresen* v. *Maryland*, 427 U.S. 463 (1976); *Warden* v. *Hayden*, 387 U.S. 294, 307 (1967).

Excepting the green suede jacket, which we think is sufficiently similar to the jacket described in the warrant, see *Commonwealth* v. *Murray*, 359 Mass. 541 (1971), the items ultimately seized from the defendant's apartment were not described. Although it is reasonable to assume that these items were in plain view during the course of a valid search, it was incumbent on the Commonwealth to illustrate the nexus between the items and the crime of which the defendant was suspected.[4] Put simply, the Commonwealth should have shown at the hearing on the motion to suppress that the police had probable cause to believe that the evidence seized was relevant to the crimes charged, and this court will not look beyond the record of that hearing in reviewing the defendant's claim of error on appeal.[5] With the possible exception of the muddy denim pants, the Commonwealth introduced no evidence of probable cause to seize any of the items. Accordingly, we order that those items be excluded from the defendant's new trial. We stated the parties' respective burdens of proof in *Antobenedetto*, and the Commonwealth here simply failed to sustain its burden. As to the muddy denim pants, we note that there was testimony at the hearing that the ground at the scene of the crime was wet from previous rain. However, we also note the conspicuous absence of testimony at that hearing that the knees and cuffs of the pants were damp or muddy. As it is not clear from the record whether the pants themselves were before the judge, a phenomenon

[4] The items were "[m]ere evidence" and could not be seized as contraband, or fruits, or instrumentalities of crime under the *Bond* rule. See *Commonwealth* v. *Hawkins*, 361 Mass. 384 (1972).

[5] We do not in any sense intend to inhibit or cut off the ability of the police to seize articles that they find in plain view. Our holding is designed simply to lead the prosecution to present at the proper time, i.e., the hearing on the motion to suppress, evidence that the police acted consistently with the mandate of the Fourth Amendment to the Federal Constitution. See *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 57 (1974).

that would have enabled him to infer the requisite connection, we remand the case to the Superior Court for limited findings of fact on the issue whether the judge was aware of the condition of the pants from evidence presented at the hearing. These findings should be filed in the Superior Court within thirty days of the publication date of this opinion, and the clerk of that court should transmit a copy of the findings here forthwith. We shall at that point issue a supplementary order as to the admissibility of this evidence at the defendant's new trial.

B. *In-court and out-of-court identifications*. The defendant claims error in the denial of his motion to suppress all of the victim's identifications. He raises four arguments in support of this contention: (1) the pretrial identification procedures employed by the police were "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to deny him due process of law, see *Stovall* v. *Denno*, 388 U.S. 293, 301-302 (1967); (2) the "reliability factors" articulated in *Manson* v. *Brathwaite*, 432 U.S. 98 (1977), as possibly outweighing suggestiveness and rendering the identifications admissible, do not exist in the instant case; (3) certain conduct engaged in by the police interfered with his right to counsel; and (4) he was denied a full and fair hearing on the motion by reason of the judge's exclusion of relevant evidence, see *Commonwealth* v. *Dickerson*, 372 Mass. 783, 789 (1977).

We have not yet decided whether to adopt the *Manson* "reliability" test in so far as it would admit identification evidence obtained through unnecessarily suggestive confrontations if the identifications are otherwise reliable. See *Commonwealth* v. *Venios*, *ante* 24, 27-28 (1979), and cases cited. See also *Commonwealth* v. *Botelho*, 369 Mass. 860 (1976). We need not decide the issue in this case either, for we perceive no constitutional infirmity in the police procedures employed. Cf. *Foster* v. *California*, 394 U.S. 440 (1969); *Stovall* v. *Denno*, *supra*. Our reasons are sufficiently similar to those expressed by the Appeals

Court to make superfluous much further comment. We think it necessary to state, however, that although some of the questions asked by defense counsel at the hearing on this motion were properly excluded, others were relevant, phrased correctly and should have been allowed. For purposes of considering the defendant's claim on appeal, we have assumed generally that the questions would have elicited answers favorable to the defendant. and accepted as true the defendant's offers of proof when made.[6] See *Commonwealth* v. *Dickerson, supra.*

The defendant's claim under the Sixth Amendment to the Federal Constitution requires additional comment. It is alleged that, prior to the probable cause hearing, the police told the defendant's then counsel that the victim had positively identified the defendant — a statement which, if made, happened not to be true. The defendant called his former counsel to testify at the hearing. However, the judge excluded most of the questions asked.[7]

It is now well-settled that the Sixth Amendment right to the effective assistance of counsel obtains at preindictment probable cause hearings. See *Commonwealth* v. *Jones,* 375 Mass. 349 (1978); *Moore* v. *Illinois,* 434 U.S. 220 (1977). One-on-one confrontations of the sort that occur during such hearings present great risks of mistaken identification. If counsel is present, he or she may eliminate some of the suggestivity by requesting that a lineup be arranged, that the suspect be seated in the audience,

---

[6] After excluding some of the questions, the judge prevented defense counsel from making offers of proof.

[7] The Appeals Court stated that, "[a]s neither [the motion to suppress] nor either of its supporting affidavits raised any question as to the admissibility of the victim's in-court identification of the defendant at the probable cause hearing, the question as to what some member of the prosecution team might have said to the defendant's then counsel in advance of that hearing . . . was properly excluded as irrelevant." *Commonwealth* v. *Rodriguez,* 6 Mass. App. Ct. at 746, app. B-2. We read the defendant's motion as challenging all identifications made of the defendant and, therefore, consider the Sixth Amendment claim to be a proper subject of appeal.

and that the witness be excused from the court room while the charges are read and the evidence recited. *Moore* v. *Illinois, supra* at 230 n.5.

In the instant case, the defendant was represented by counsel. However, he claims that this representation was hampered by a material misstatement made by the police. It is not inconceivable that counsel decided to forgo precautionary measures, in light of the information allegedly conveyed. We think that the defendant was entitled at least to be heard on the issue, since the total inquiry might well have led to the exclusion of both identifications made on the day of the probable cause hearing.

## III. EVIDENTIARY RULINGS.

The trial of this case lasted over a week, and the requests denied, questions excluded, and exceptions taken number in the several hundreds. It is unnecessary for us to review every claim of error, particularly in light of the fact that the judge's rulings were in many instances correct. Rather, we confine our discussion to those broad topics of contention that are likely to recur at the defendant's new trial.

A. *Motion for a view.* Prior to trial the defendant moved that the jury be taken on a view to the scene of the crime. This motion was denied without prejudice. During trial the defendant renewed his motion, and once again it was denied. Although we might have ruled differently, given the circumstances of this case and the defendant's claim of mistaken identification, we cannot say that the judge abused his discretion. He might well have thought that a view would be of no aid to the jury, cr that potential differences in lighting conditions would render a view misleading. In such circumstances, it was his prerogative to deny the defendant's motion. See *Commonwealth* v. *Curry,* 368 Mass. 195, 198 (1975); *Commonwealth* ₀v. *Lamoureux,* 348 Mass. 390, 391-392 (1965).

B. *Alleged suggestiveness of identification procedures.*
Defense counsel attempted at numerous points during
trial to bring the pretrial identification procedures em-
ployed by the police to the jury's attention. The judge
excluded the evidence as irrelevant, and the defendant
argues that the exclusions were error. We must agree.
Where identification evidence has not been suppressed,
its infirmities are a matter for consideration by the jury.
See, e.g., *Commonwealth* v. *Jones,* 375 Mass. 349, 355
(1978); *Commonwealth* v. *Funderberg,* 374 Mass. 577, 581-
582 (1978); *Commonwealth* v. *Botelho,* 369 Mass. 860, 866
(1976); *Commonwealth* v. *Bumpus,* 362 Mass. 672, 678-679
(1972), judgment vacated and remanded on other
grounds, 411 U.S. 945 (1973), aff'd on rehearing, 365
Mass. 66 (1974). See also *Simmons* v. *United States,* 390
U.S. 377, 384 (1968). The defendant was entitled not only
to inform the jury of procedures used which might have
been somewhat suggestive, but also to establish the exis-
tence of fairer procedures which the police chose to ig-
nore. See, e.g., *Commonwealth* v. *Kazonis,* 356 Mass. 649,
652 (1970) (the absence of a lineup may in and of itself be
suggestive).

C. *Inadequacy of testing procedures.* As noted earlier, a
substantial portion of the Commonwealth's case consist-
ed of physical evidence implicating the defendant. De-
fense counsel sought to bring out alleged inadequacies in
the tests performed by the Commonwealth's experts, and
also attempted to establish the existence of more reliable
tests, not performed by those experts, which might have
exonerated the defendant. The judge excluded much of
this evidence, stating that "the fact that something might
have been done and [was] not has no relevance." We disa-
gree and hold that the evidence was admissible. See, e.g.,
*Commonwealth* v. *Pettie,* 363 Mass. 836, 840-841 (1973)
(authorities' failure to test for presence of drugs in al-
leged murder victim's body is relevant when defendant
claimed death was caused by overdose).

D. *The victim's prior inconsistent statement.* Twice during trial, defense counsel asked that the stenographer present at the probable cause hearing be called to testify to a prior inconsistent statement made by the victim. The defendant pointed out that he had not been provided with a transcript of the hearing despite his repeated requests. The judge refused to call the stenographer, and the Appeals Court found no error. That court reasoned that defense counsel's assistant at the probable cause hearing (a law student) was available and capable of testifying. We think that the defendant was entitled to the testimony of a witness inherently more believable to the jury than the defense counsel's assistant would be. The denial of the motion was error.

E. *Unaltered "mugshot" photographs of the defendant.* The defendant asked that his mugshot be excluded from evidence at trial, arguing that "the nature and appearance of the photographs" — there were two, one full-face, the other a profile, both with numbers crossed out at the bottom — indicated that he had a prior criminal record and undermined his presumption of innocence. In the event that the mugshots were admitted, he asked that the jury be informed of his acquittal on the prior charge. The defendant was not entitled to the requested instruction. However, he was entitled to have objectionable material on the mugshots obscured or removed before they were admitted in evidence. In *United States* v. *Fosher,* 568 F.2d 207 (1st Cir. 1978), the Court of Appeals held that in order for mugshots to be admitted, the government must demonstrate a need to introduce them, they must not imply a criminal record, and the manner surrounding their introduction must not call attention to the source from which they came. We have cited *Fosher* with approval in the past, see *Commonwealth* v. *Cobb,* 374 Mass. 514, 522-523 (1978), and continue to think it an enlightened rule. The mugshots should have been severed, and "sanitized" in all other respects. Cf. *Commonwealth* v. *Kelly,* 1 Mass. App. Ct. 441 (1973).

## IV. CONCLUSION.

The judgments are reversed, the verdicts are set aside, and the case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*

## APPENDIX.[1]

"One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The Government has the burden of proving identity, beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

"Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

"In appraising the identification testimony of a witness, you should consider the following:

"Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

"Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past.

"In general, a witness bases any identification he makes on his perception through the use of his senses. Usually the witness identifies an offender by the sense of sight—but this is not necessarily so, and he may use other senses.

---

[1] The instructions set out in this appendix are taken from *United States* v. *Telfaire*, 469 F.2d 552, 558-559 (D.C. Cir. 1972). We consider them to be appropriate to cases in which identification is in issue. Of course, they may be modified or embellished as the evidence and allegations at trial require.

"Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

"If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see the defendant, as a factor bearing on the reliability of the identification.

"You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.

"You may take into account any occasions in which the witness failed to make an identification of defendant, or made an identification that was inconsistent with his identification at trial.

"Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

"I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty."