COMMONWEALTH vs. ROBERT J. EVANS.

Suffolk. February 1, 1993. - June 8, 1993.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Homicide. Evidence*, Other offense. *Practice, Criminal*, Instructions to
jury, Agreement between prosecutor and witness, Assistance of counsel.
*Witness*, Credibility, Bias.

At a murder trial, testimony of a certain witness on redirect examination
implying that the defendant had a prior criminal record did not require
reversal of the defendant's conviction, where the defendant brought out
most of the same facts on cross-examination of that witness and where
the redirect testimony was properly admissible for rehabilitation of the
witness. [424-426]
At a murder trial, no substantial likelihood of a miscarriage of justice was
created by the judge's instructions on the effect of prior inconsistent
statements in assessing the credibility of witnesses [426], or on the im-
pact on credibility of an agreement not to prosecute one of the wit-
nesses [427-428].
At a murder trial, the judge appropriately instructed the jury on the issue
of alibi where the defendant had presented evidence tending to show
that the defendant was elsewhere at the time the offense was committed
[428-430], and there was no basis in the record to conclude that de-
fense counsel was ineffective for failing to object to either that instruc-
tion or the Commonwealth's argument on the issue [430].

INDICTMENT found and returned in the Superior Court De-
partment on August 14, 1987.

The case was tried before *Robert V. Mulkern*, J.

*Robert L. Sheketoff* for the defendant.

*Vincent R. McDonough*, Assistant District Attorney, for
the Commonwealth.

ABRAMS, J. Convicted of murder in the first degree, the
defendant, Robert Evans, appeals, alleging error (1) in the
admission of testimony on redirect examination that permit-
ted the jury to draw an inference that the defendant had a

prior criminal record; (2) in the instructions to the jury; and (3) in that he was denied the effective assistance of trial counsel. The defendant requests that we exercise our power under G. L. c. 278, § 33E (1990 ed.), and order a new trial. For the reasons stated herein, we affirm the judgment. We decline to exercise our power under G. L. c. 278, § 33E, in the defendant's favor.

We set forth the evidence in the light most favorable to the Commonwealth. See *Commonwealth* v. *Salemme,* 395 Mass. 594, 595 (1985). The jurors could have found the following facts. At about 1:30 A.M. on May 25, 1987, the victim arrived at the Beacon Hill Pub in Boston with his fiancée and several friends. The group found a table, and the victim went to the bar to order drinks. While at the bar, the victim bumped into another patron, and a brief argument ensued between the two. The defendant was standing nearby and joined in the argument, shouting expletives at the victim, and then walked back to his own table, where his female companion was seated. The defendant told his female companion to retrieve a knife from the back seat of her car. She did so. The defendant tucked the knife into the waistband of his trousers.

Shortly thereafter, the victim entered the restroom. The defendant followed about a minute later. About thirty seconds later, the defendant came out of the restroom, knife in hand, and left the bar with his female companion. The victim then staggered from the restroom, clutching his bleeding chest, and collapsed on the floor. The victim died from a single stab wound to the heart.

The defendant argued outside the bar with one of the victim's friends before leaving with his female companion in her car. The defendant told his female companion to drive to a reservoir in Somerville, where he disposed of the knife. On the way, the defendant told his companion, "I'm going away for a long time." He said that he gave the victim "a little poke in the abdomen." The defendant admitted to another woman that the victim "had beat his brother Mark with a baseball bat a long time ago." The defendant told that wit-

ness that "that is what happens to people who mess with someone in my family." The defendant also told the woman that he stabbed the victim in the heart. The defendant showed the witness how he "stuck [the victim] in the heart." The defendant threatened each woman with harm if she testified against him.

1. *Prior criminal record.* On redirect examination the assistant district attorney elicited testimony from the witness[1] that she worked for the Department of Correction and that she had met the defendant through her job.[2] The defendant argues that the introduction of such testimony implied that the defendant had a prior criminal record and therefore violated the defendant's right to a fair trial, guaranteed by the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. The defendant also points to subsequent testimony by the same witness to argue that the inference that the defendant had a prior criminal record was made inescapable[3]; the defendant did not object to this testimony.

---

[1] The defendant's former female companion.

[2] The questioning was as follows:

| | |
|---|---|
| THE PROSECUTOR: | "And you were working for the Department of Corrections at that time; is that correct?" |
| THE WITNESS: | "Correct." |
| THE PROSECUTOR: | "And did you meet the defendant through your employment at the Department of Corrections?" |
| [DEFENSE COUNSEL]: | "Objection." |
| THE JUDGE: | "Objection is overruled." |
| THE WITNESS: | "Yes, I did." |

[3] The testimony was as follows:

| | |
|---|---|
| THE PROSECUTOR: | "And in March of 1986 — strike that. March of 1987 did you remove some documents from the files of the Department of Corrections?" |
| THE WITNESS: | "Yes, I did." |
| THE PROSECUTOR: | "And where were those files located?" |
| THE WITNESS: | "At M.C.I. Walpole." |
| THE PROSECUTOR: | "And whose files did you remove?" |
| THE WITNESS: | "I removed Richard and Robert Evans." |
| THE PROSECUTOR: | "At whose request did you remove those files?" |
| THE WITNESS: | "Robert Evans." |

Acknowledging that in some situations evidence of independent crimes is admissible against a criminal defendant, *Commonwealth* v. *Libran*, 405 Mass. 634 (1989), the defendant maintains that it was error in this case to pursue or allow such a line of questioning, and that such error requires that a new trial be ordered. See, e.g., *Commonwealth* v. *Stone*, 321 Mass. 471 (1947). We do not agree.

On cross-examination, the defendant brought out most of the facts he now argues constitute reversible error. It was the defendant who elicited the fact that the witness was a records clerk at the Department of Correction; that she stole files from the Department as a favor to the defendant; that she betrayed the Department's trust by stealing files and by dating the defendant; that her father was a training officer for the Department of Correction; and that her father would not have permitted her "to associate with an ex-felon."[4] The defendant also brought out that, prior to the homicide, the witness used to call the defendant "from a pay phone using a roll of nickels before he got out the first time, before the homicide."

On cross-examination, the witness admitted that she lied to her parents, the police, and the grand jury. The defendant elicited that testimony to impeach the witness's credibility and to show the witness's bias and motive to fabricate her testimony. Evidence of other crimes, if relevant for a purpose other than proving bad character, "is not rendered inadmissible merely because it indicates the possible commission of another offense." *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 269 (1982). The judge allowed the Commonwealth to rehabilitate the witness on redirect by permitting her "to explain the prior statement and the reason for any omission or inconsistency." *Commonwealth* v. *DiLego*, 387 Mass. 394, 399 (1982). See *Commonwealth* v. *Fatalo*, 345 Mass. 85, 86-87 (1962). The admission of the redirect testimony of the

---

[4] Essentially, the only significant fact brought out on redirect was that the witness stole the defendant's file as well as the file of his brother.

witness does not require reversal of the defendant's conviction.

2. *Jury instructions.* The defendant next argues that the judge did not instruct the jury on the use of prior inconsistent statements, or on the impact of an agreement not to prosecute one of the witnesses. The defendant failed to object to the instructions to the jury. We therefore review the instructions to determine whether there was a substantial likelihood of a miscarriage of justice. G. L. c. 278, § 33E. "We . . . view the charge in its entirety since the adequacy of instructions must be determined in light of their over-all impact on the jury." *Commonwealth* v. *Sellon,* 380 Mass. 220, 231-232 (1980). See *Commonwealth* v. *Lowe,* 391 Mass. 97, 109, cert. denied, 469 U.S. 840 (1984).

a. *Credibility.* The defendant asserts that the instructions were inadequate on the effect of prior inconsistent statements. The judge focused extensively on the jurors' roles in assessing the credibility of witnesses, in particular instructing the jury to consider whether the "testimony of [a] witness [has] what I term internal integrity? Does it come together with other things that the witness has testified to?" The judge also emphasized that the jury had the sole obligation to determine the weight and credibility to give to the testimony of a witness, and that the jury could disregard the testimony of an incredible witness in whole or in part.[5] There is no substantial likelihood of a miscarriage of justice.[6]

---

[5]The defendant relies on *Commonwealth* v. *Anderson,* 396 Mass. 306 (1985). Here the judge's instructions contained language similar to those the defendant in *Anderson* requested.

[6]On appeal, the defendant's argument regarding prior inconsistent statements is directed primarily at the testimony of Kevin Ferguson. As to Ferguson's prior statements, Ferguson testified that the defendant had a knife and a pocketbook in one hand after the stabbing; earlier he stated that the defendant's girlfriend had the pocketbook. Ferguson testified that he told a bartender that someone had been stabbed; on some other occasions he stated that he told the barmaid. Ferguson testified that he had not seen the defendant in a minimum of five years before the incident; closer to the incident itself Ferguson stated that he had not seen the defendant in nine years.

b. *Agreement not to prosecute.* The defendant, relying on *Commonwealth* v. *Ciampa*, 406 Mass. 257, 263 (1989), asserts that the judge's charge did not adequately direct the jury's attention to the potential influence of an agreement not to prosecute on a witness's credibility, and did not dispel any implication inherent in a truthfulness agreement that the prosecution knew or believed the witness was telling the truth. The judge instructed the jury on the potential for witness bias stemming from a desire to cooperate with the Commonwealth. "There was also evidence in the case . . . of pending criminal matters . . . when I say pending, I am not indicating that something is going to happen by way of prosecution but rather possibly pending. . . . Another instance there was, I believe, some evidence of a filed case and a filed case in the technical sense may be withdrawn from the file and prosecuted. You may use that evidence, if you use it, as an indication that a witness may have some desire to be cooperative with either the government or the defendant depending on the witness. It is for you to say whether or not such motivation on the part of the witness is or is not shown by the admission of evidence of possible pending prosecution."

In *Ciampa*, we noted that the written agreement not to prosecute contained repeated references to a truthfulness requirement and implied that the Commonwealth could verify or had verified the truthfulness of a witness's statements. We said that, in such circumstances, curative instructions were required. *Id.* at 260-269. See *Commonwealth* v. *Daye*, 411 Mass. 719, 739-740 (1992); *Commonwealth* v. *Sullivan*, 410 Mass. 521, 524-525 (1991); *Commonwealth* v. *Colon*, 408 Mass. 419, 445 (1990). Here, the Commonwealth did not imply that it vouched for the truth of a witness's statements. The Commonwealth disclosed the agreement during the witness's testimony. The witness said she agreed to be truthful.[7]

---

[7]The defendant argued that, in the circumstances, the witness found herself in a situation in which she was compelled to lie to the jurors: "Now, the district attorney's office said to her, 'We promise you that we won't prosecute you for accessory to murder and we won't prosecute you

The defendant then brought out that the witness lied to her parents, the police, and under oath before the grand jury. He also brought out that, after the homicide, she continued to deceive her parents and that she wrote to the defendant in disguised handwriting to conceal her relationship with the defendant from her father. In these circumstances, the judge's instructions were adequate. There is no substantial likelihood of a miscarriage of justice.

3. *The effectiveness of trial counsel.* The defendant argues that the Commonwealth sought to miscast the nature of the defendant's defense, and in so doing deprived the defendant of his right to a fair trial. The defendant asserts that the judge erroneously reinforced the prosecution's unfair argument by instructing the jury on alibi when the defendant had not presented an alibi defense. The defendant contends that counsel's failure to object to the Commonwealth's argument and the judge's instruction constituted ineffective assistance of counsel. We disagree.

During closing argument, the prosecutor highlighted potentially conflicting testimony of various defense witnesses.[8]

---

for perjury if you tell the truth.' Now, those are the words that are spoken, ladies and gentlemen. But what is the meaning of those words? What does your common sense tell you and what does [the witness] understand those words to mean? That if you get on the stand and you put the finger on this guy, then you are home free. But if you go on the stand at his trial and you testify as you testified in the grand jury under oath, under the same oath she took here, what's the Suffolk County District Attorney's office going to do to [the witness] then? [The witness] would be in here next week, ladies and gentlemen. [The witness] saw that and [her father] made damn sure she saw that. So what does the stand-up young girl do? Even though the words are 'go in and tell the truth, [the witness],' it is 'go in and put Robert Evans in the can.' "

[8]The prosecutor's argument was as follows: "Madam forelady, ladies and gentlemen of the jury, it is unclear, I suggest to you, . . . what the defense is in this case. James Flint got on the stand yesterday and would have you believe that the defendant was with him at some parking lot of the American Legion post in Somerville at the time this murder happened. Virginia Kelly would have you believe that the defendant was standing with her for 15 minutes right outside the men's room of the Beacon Hill Pub at the time the murder happened. Chris Kelly suggests to you through his testimony that the person who stabbed Frankie Quinn was named

The defendant claims that the prosecution unfairly attempted to cast the defendant's defense as consisting of two conflicting alibis, and that by characterizing the defense as "bilocation," the prosecution "made a mockery of [the defense's] presentation."

The defendant asserts that he introduced evidence tending to show that he was in a parking lot in Somerville between 1:30 and 2 A.M. in order to refute another witness's testimony as to the events that occurred after the stabbing, not to show that he was not in the Pub at the time of the stabbing. That is not clear on the record. The Commonwealth could comment on the evidence as to the sequence of events and the defendant's evidence as to his location around the time of the stabbing. The defendant's "trial tactics are not immune from comment in a prosecutor's final argument provided the comment is based on evidence heard by the jury." *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 272 (1982).

Because the judge instructed the jury on alibi, without request or objection by the defendant, the defendant contends that the court "chose to reinforce the prosecutor's claim that the defense was bilocation, [and] the defendant's state and federal constitutional rights to a fair trial were [therefore] seriously undermined. . . . [T]he creation of a false issue served to rob the defense of its viability."

The defendant relies on *Commonwealth* v. *Rodriguez*, 378 Mass. 296 (1979). That reliance is misplaced. In *Rodriguez*, we emphasized that a complete failure to instruct the jury on a crucial issue may unfairly deprive a defendant of a legitimate defense. *Id.* at 302. Here the judge appropriately instructed the jury on the issue of alibi, as the defendant had presented evidence tending to show that when the stabbing occurred the defendant was elsewhere.[9] The judge stressed that a defense that the defendant was elsewhere was an ap-

Ricky. And the defense brings in for you to view, the defendant's brother, Richard, who looks like the defendant."

[9]The evidence could be construed to show that the defendant was in the Pub but not in the men's room, or that the defendant was not in the Pub at all at the time of the stabbing.

propriate defense, and that the burden always remained on the Commonwealth to prove that the defendant was at the scene of the crime. The judge's instruction did not undermine the defendant's defense, or reinforce an inappropriate argument advanced by the Commonwealth.

There is no basis to conclude that the defendant's trial counsel was ineffective by trying to use the confusion immediately after the killing to create a reasonable doubt as to the defendant's guilt. That he did not succeed does not mean he was ineffective. *Breese* v. *Commonwealth, ante* 249 (1993).

4. *Review pursuant to G. L. c. 278, § 33E.* We have reviewed the entire record and conclude that we should not exercise our power under G. L. c. 278, § 33E, to reduce the verdict to a lesser degree of guilt or to order a new trial.

*Judgment affirmed.*