The defendant, Dennis F. Jordan, appeals from Superior Court convictions on three indictments for armed assault with intent to murder, G. L. c. 265, § 18(b ) ; three indictments for assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A(b ) ; and one indictment for unlawful possession of a firearm, G. L. c. 269, § 10(a ), as an armed career criminal with three prior convictions, G. L. c. 269, § 10G(c ), and from the trial judge's denial of his motions for new trial and for postconviction discovery. Concluding that (1) the limitations on cross-examination were within the trial judge's discretion; (2) the defendant has not demonstrated prejudice from the alleged delayed disclosure of exculpatory evidence; (3) trial counsel's failure to request a specific jury instruction on honest but mistaken identification did not deprive the defendant of a substantial, available defense; and (4) the motion judge properly found that suppression of the defendant's statements made while in custody after his arrest was not required, we affirm.
Background. In the evening of September 13, 2002, through the early morning hours of September 14, 2002, a private bus driver dropped off a group of seven men, including the defendant, near the old Brockton Area Transportation terminal.[2] At that location, the three victims were serving as security for an after-hours party. After one of the victims removed the defendant from the line for entry, a violent altercation ensued. Ultimately, the defendant and another member of his group fired shots. One of the victims, Nawarrior Lewis, was struck by three bullets and remains paralyzed from the waist down. The other two victims were also struck by bullets and suffered less serious injuries. Two of the victims later identified the defendant as one of the gunmen. One was already familiar with the defendant, but Lewis was not.
After the gunshots, the bus driver observed the defendant return to the bus and bang on the door while holding a black handgun. Another member of the group also had a gun. The driver let the group onto the bus, and the defendant instructed him to drive off.
On October 11, 2002, Stoughton police officers arrested the defendant. During booking, officers provided the defendant with his Miranda rights, and he invoked his right to remain silent. When Brockton police officers, including Detective Dominic Persampieri, arrived soon after to transport the defendant to Brockton, the defendant became agitated and initiated a brief verbal exchange with Detective Persampieri. At the Brockton police station, officers booked the defendant and provided him with his Miranda rights again. The officers did not inform the defendant of his right to prompt arraignment.
In an interview room shortly thereafter, Detective Persampieri asked the defendant if he wanted to make any statements. The defendant refused to speak with Detective Persampieri, but instead requested to speak to Detective Ernest Bell, who was home sick at the time. Detective Bell eventually acquiesced to the defendant's request and arrived at the station to interview the defendant about the incident. The interview, in which the defendant denied involvement with the shooting, lasted from 8:15 P.M. to somewhere between 9:15 P.M. and 9:30 P.M.
Prior to the defendant's second jury trial,[3] the defendant filed several motions to suppress statements made after his arrest, all of which were denied. A jury ultimately convicted the defendant on all counts. At a subsequent jury-waived trial, the trial judge found the defendant guilty as an armed career criminal with three prior convictions.
Discussion. 1. Cross-examination. The Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights entitle a defendant to cross-examine prosecution witnesses for bias or prejudice. Commonwealth v. Avalos, 454 Mass. 1, 6-7 (2009). A judge may not "bar all inquiry into the subject" if the defendant demonstrates "a possibility" of bias. Commonwealth v. Magadini, 474 Mass. 593, 604 (2016), quoting from Commonwealth v. Tam Bui, 419 Mass. 392, 400, cert. denied, 516 U.S. 861 (1995). Nonetheless, a judge retains broad discretion both in "[d]etermining whether the evidence demonstrates bias" and in otherwise imposing reasonable restrictions on cross-examination. Avalos, supra at 7, quoting from Commonwealth v. LaVelle, 414 Mass. 146, 153 (1993) ; Commonwealth v. Garcia, 470 Mass. 24, 35 (2014). "A defendant must make a 'plausible showing' of alleged bias, with a factual basis for support"; otherwise, the judge may restrict or entirely exclude the inquiry. Commonwealth v. Sealy, 467 Mass. 617, 624 (2014), quoting from Tam Bui, supra at 401. See Commonwealth v. Johnson, 431 Mass. 535, 538 (2000) (affirming exclusion of cross-examination where "the import of the question was too attenuated to create a remote possibility of ... bias"). On appeal, the defendant bears the burden of showing that the judge abused his discretion in restricting cross-examination, Garcia, supra at 35, and must establish that error from the trial record. Avalos, supra.
Here, the trial judge acted within his discretion in restricting the defendant's inquiry given the lack of supporting evidence. The defendant suggests that the bus driver provided biased testimony at trial on account of the defendant's alleged involvement in the murder of the witness's brother. This theory rests on the purported connection between the murder and certain individuals, supposedly associated with the defendant, motivating the witness to later target them while working with Federal authorities in otherwise unrelated criminal investigations. The record, however, does not provide factual support to link either the defendant himself, or even the targeted individuals, to the death of the witness's brother.
The mere fact, moreover, that a witness may be biased against particular persons does not support the inference that the witness is also biased against anyone familiar with those persons. Thus, even if the defendant was familiar with those individuals, that fact would not provide the requisite factual basis to imply the witness was biased against the defendant. See Sealy, 467 Mass. at 625 (defendant's failure to sufficiently establish witness's motive to lie precluded further inquiry). To the contrary, the witness specifically testified that the Federal investigations, carried out years after the defendant's conviction, did not relate in any way, nor to any person involved in, the present case. The judge could thereby find that the defendant's argument fell into the realm of speculation. See Commonwealth v. Meas, 467 Mass. 434, 450-451 (2014).
2. Delayed disclosure. To require a new trial based on delayed disclosure of exculpatory evidence, a defendant must show "how his trial tactics would have or should have changed, had he been aware of the [evidence] earlier." Commonwealth v. Stote, 433 Mass. 19, 23 (2000). The disclosure of the targeted individuals' names, late or not, did nothing to change the defendant's position. See Commonwealth v. Molina, 454 Mass. 232, 236-237 (2009) (late disclosure caused no prejudice where defendant's cross-examination was not impacted). Instead, the defendant's theory remains premised on a missing link, see Commonwealth v. Watkins, 473 Mass. 222, 235 (2015), and he is unable to establish a logical inference that the witness was motivated to fabricate his testimony. Without more, the defendant cannot show the requisite prejudice for a new trial. Molina, supra at 242 (claim of "late disclosure ... requires the defendant to show prejudice").
3. Ineffective assistance of counsel. To establish ineffective assistance of counsel, the defendant "must demonstrate that (1) defense counsel's conduct fell 'measurably below that which might be expected from an ordinary fallible lawyer' ... and (2) he was prejudiced by counsel's conduct in that it 'likely deprived the defendant of an otherwise available, substantial ground of defence.' " Commonwealth v. Lys, 91 Mass. App. Ct. 718, 720 (2017), quoting from Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). The defendant argues that trial counsel rendered ineffective assistance in failing to request an instruction on the possibility of an honest but mistaken identification under Commonwealth v. Pressley, 390 Mass. 617, 619-620 (1983).[4] Pretermitting the first prong of Saferian, we conclude that the defendant has not demonstrated that he was prejudiced by this omission.
First, the instructions given alerted the jury to the possibility of an honest but mistaken identification. They directed the jury to the "witness's frankness or evasiveness," "the reasonableness of the testimony," "the opportunity that the witness had to observe what it is they're telling you," and "the accuracy of the witness's memory" (emphases supplied). This was sufficient to draw the jury's attention to the distinct issue of honest but mistaken identification in determining the reliability of eyewitness testimony. See Commonwealth v. Franklin, 465 Mass. 895, 913 (2013) (concluding that instruction pursuant to Commonwealth v. Rodriguez, 378 Mass. 296 [1979], was unnecessary where jury were "informed that they could 'consider the ability, the opportunity, and the reliability of a witness to see or hear something in the past and then remember and later testify' "). Given that "a judge need not give 'a particular instruction so long as the charge, as a whole, adequately covers the issue,' " Commonwealth v. Watson, 455 Mass. 246, 259 (2009), quoting from Commonwealth v. Cruz, 445 Mass. 589, 597 (2005), the instruction as given provided adequate basis for the jury to consider the possibility of an honest but mistaken identification.
Second, contrary to the defendant's arguments, the testimony of Lewis (the only identifying eyewitness for whom honest but mistaken identification was a viable theory) was not the only evidence, or even the most important evidence, implicating the defendant in the crime. As noted in the Commonwealth's closing, multiple witnesses connected the defendant to the crime, including those familiar with him and at the scene of the crime, and the Commonwealth provided corresponding ballistic evidence. Significantly, the defendant's own incriminating and inconsistent statements provided the most substantial evidence of his guilt. See Commonwealth v. Navarro, 474 Mass. 247, 259 (2016) ("[T]he defendant's identity as a perpetrator of the crime did not rest solely, or even largely, on those identifications"). Contrast Pressley, 390 Mass. at 620 ("Identification was crucial to the Commonwealth's case because there appears to be no evidence of the defendant's complicity independent of the identification"). Viewing this evidence, independent of the identifying testimony at issue, together with the fact that the instructions as given provided the basis for an argument regarding honest but mistaken identification, "we are not persuaded that ... including an instruction on good faith error in identification[ ] would have been 'likely to have influenced the jury's conclusion.' " Franklin, 465 Mass. at 912-913, quoting from Commonwealth v. Walker, 460 Mass. 590, 598 (2011).
4. Motion to suppress. "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " Commonwealth v. Callender, 81 Mass. App. Ct. 153, 154 (2012), quoting from Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002). "[O]ur duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. Clarke, 461 Mass. 336, 340 (2012), quoting from Commonwealth v. Bostock, 450 Mass. 616, 619 (2008).
a. Right to remain silent. Under Miranda v. Arizona, 384 U.S. 436 (1966), "[o]nce a defendant has invoked his right to remain silent, interrogation must immediately cease and the invocation must be 'scrupulously honored.' " Commonwealth v. Dixon, 79 Mass. App. Ct. 701, 707 (2011), quoting from Michigan v. Mosley, 423 U.S. 96, 104 (1975). "Absent such 'scrupulous' protection of the right to remain silent, statements made after invocation of the right are inadmissible." Clarke, 461 Mass. at 343.
The protections of Miranda, however, do not apply to the defendant's statements to Detective Persampieri at the Stoughton police station because they were not in response to any interrogation. See Commonwealth v. Koumaris, 440 Mass. 405, 410 (2003) ("Because the defendant was not subject to an interrogation by correction officers, Miranda warnings were not necessary"). The defendant was not asked any questions by Detective Persampieri or the other officers at the Stoughton police station before he made his comments there. Instead, the defendant initiated the exchange while "agitated" and "swearing" at Detective Persampieri, declaring, "[Y]ou ain't got nothing on me, you can't prove nothing," and, "[W]itnesses seem to not want to testify." The detective then responded, saying, "[W]e may be charging you federally," to which the defendant stated, "[Y]ou ain't got the gun." "Spontaneous or unprovoked statements are not the product of custodial interrogation" and are therefore admissible, Commonwealth v. Martin, 467 Mass. 291, 309 (2014), as are voluntary statements that follow an officer's natural and invited response to the defendant's initial comments. See Commonwealth v. Diaz, 422 Mass. 269, 271 (1996) ; Commonwealth v. Clark, 432 Mass. 1, 16 (2000) ; Koumaris, supra at 409-410 (no interrogation where defendant confessed when officer responded, "Go ahead. Tell me what you got to say" after defendant instigated conversation). The comments here, as a result, are admissible.
Closer inquiry is required surrounding the defendant's statements made later to Detective Bell at the Brockton police station, as custodial interrogation resumed at that point. See Callender, 81 Mass. App. Ct. at 157. In determining "whether the person's right to be free from interrogation, once exercised, was 'scrupulously honored' before questioning resumed," ibid., quoting from Commonwealth v. Atkins, 386 Mass. 593, 598 (1982), we "look to the totality of the circumstances." Callender, supra at 158. Relevant factors include:
"(1) whether a significant amount of time elapsed between the suspect's invocation of the right to remain silent and further questioning; (2) whether the same officer conducted both the interrogation where the suspect invoked the right and the subsequent interrogation, and whether the venues differed; (3) whether the suspect was given a fresh set of Miranda warnings before the subsequent interrogation; (4) whether the subsequent interrogation concerned the same crime as the interrogation previously cut off by the suspect; and (5) the persistence of the police in wearing down the suspect's resistance in order to change his mind."
Id. at 157. See Mosley, 423 U.S. at 105-106. The criteria are not exhaustive and no single factor is dispositive. Callender, supra at 157-158.
Regarding the first factor, the interval between the defendant's invocation of his right to remain silent and further questioning does not support suppression, given that over three hours had elapsed between the defendant's 4:40 P.M. invocation in Stoughton and the beginning of his interrogation in Brockton at approximately 8:15 P.M. See Commonwealth v. Rivera, 424 Mass. 266, 269 (1997) (no Mosley violation where interval was three and one-half hours); Commonwealth v. Avellar, 70 Mass. App. Ct. 608, 616-617 (2007) (reversing suppression where interval was approximately two hours).
Regarding the second factor, Detective Bell was not the officer before whom the defendant invoked his Miranda rights in Stoughton, nor was he present when the defendant said he did not want to speak with Detective Persampieri.[5] This factor, therefore, does not support suppression. The defendant here was not questioned further by Detective Persampieri after the defendant expressed the desire not to be questioned by him, and the defendant's express and repeated requests to speak with Detective Bell were granted. See Callender, 81 Mass. App. Ct. at 159, quoting from Mosley, 423 U.S. at 104 (second Mosley factor inclines toward Commonwealth where defendant was questioned by different officer in different venue, and where "the defendant's 'right to cut off questioning' was fully respected").
Regarding the third factor, the defendant was repeatedly advised of his Miranda rights, including immediately preceding the questioning by Detective Bell. See Mosley, 423 U.S. at 104-105 (defendant given fresh warning prior to second interrogation "was thus reminded again that he could remain silent and could consult with a lawyer, and was carefully given a full and fair opportunity to exercise these options"). Contrast Commonwealth v. Jackson, 377 Mass. 319, 326, 329 (1979) (violation resulted where "the police conduct ... was contrary to the letter and the spirit of the Miranda decision"); Callender, 81 Mass. App. Ct. at 160 ("By first getting the defendant in the rhythm of answering questions before providing the fresh Miranda warnings, the officers undermined the spirit of Mosley").
Regarding the fourth factor, "whether the subsequent interrogation concerned the same crime as the interrogation previously cut off by the suspect," Callender, 81 Mass. App. Ct. at 157, there had been no interrogation on any subject prior to Detective Bell's interview. We have, nonetheless, held that this factor "weighs against the Commonwealth" where, as here, the defendant is questioned about the only crime for which he was arrested. Id. at 160. See Mosley, 423 U.S. at 105 (describing this factor as whether interrogation "focused exclusively on ... a crime different in nature and in time and place of occurrence from the [crime] for which [the defendant] had been arrested and interrogated").
Regarding the fifth factor, we see little persistence by the police in wearing down the defendant. There is no evidence in this record that Detective Persampieri knew that the defendant had invoked his Miranda rights in Stoughton. Contrast Callender, 81 Mass. App. Ct. at 160-161 ("[T]he officers knew of the defendant's Miranda invocation before they attempted to speak with him"). In light of the apparently acrimonious relationship between the defendant and Detective Persampieri, when the defendant stated that "he did not want to talk with him" (emphasis supplied), the question whether the defendant wanted to talk to someone else was a natural one.
Considering the "totality of the circumstances," Callender, 81 Mass. App. Ct. at 158, this case is closer to Rivera than Callender. In Rivera, as here, suppression was not required "because the booking officer never questioned the defendant, and other officers did so only after three and one-half hours had passed." Rivera, 424 Mass. at 269. In Callender, unlike here, only thirty-five minutes had passed, the interrogation "took place in the same booking room where the defendant had invoked his right to remain silent," the officers got "the defendant in the rhythm of answering questions before providing the fresh Miranda warnings," and the interrogating "officers knew of the defendant's Miranda invocation before they attempted to speak with him." 81 Mass. App. Ct. at 158-161. Accordingly, the motion judge correctly denied the motion to suppress on this ground.
b. Right to prompt arraignment. Pursuant to Mass.R.Crim.P. 7(a)(1), as appearing in 461 Mass. 1501 (2012), and Commonwealth v. Rosario, 422 Mass. 48 (1996), the police are required to arraign an arrested individual before a court "as soon as is reasonably possible," Commonwealth v. Siny Van Tran, 460 Mass. 535, 560 (2011), and statements made by a defendant over six hours after arrest are generally inadmissible without arraignment "unless the defendant makes 'an informed and voluntary ... waiver of his right to be arraigned without unreasonable delay.' " Ibid., quoting from Rosario, supra at 56. The defendant in this case was arrested at approximately 3:09 P.M. , and was interviewed by Detective Bell from around 8:15 P.M. until between 9:15 P.M. and 9:30 P.M. with neither arraignment nor any waiver of that right. As a result, between six and twenty-one minutes of the interview occurred after the six-hour limit. The last paragraphs of Detective Bell's notes from the interview, taken in chronological order, include the defendant's description of the shooting, leaving the scene in a car with a woman named Star, and being able to find the guns used in the shooting. All these statements are either inconsistent with other witness testimony, or are inherently inculpatory. See Commonwealth v. Cartwright, 478 Mass. 273, 286-287 (2017) (analyzing Rosario claim where six hours expired during interrogation).
It is undisputed that the defendant was interrogated beyond the six-hour limit in violation of the bright-line Rosario rule. The rule, however, is subject to "exceptional circumstances ... 'not attributable to the police,' that render[ ] it extremely impractical, if not impossible, to conduct an interrogation within six hours of arrest." Siny Van Tran, 460 Mass. at 562, quoting from Rosario, 422 Mass. at 57. In such cases, statements made by defendants that do not violate the "spirit of Rosario," Siny Van Tran, supra at 563, are admissible if there is no suggestion of police coercion through "intentional delays of arraignment to prolong custodial interrogation of unwilling and uncounseled arrestees." Commonwealth v. McWilliams, 473 Mass. 606, 614 (2016), quoting from Siny Van Tran, supra at 563.
Here, neither the defendant's arraignment nor his interview was delayed by intentional police misconduct. The time from the arrest to the interview with Detective Bell elapsed partly through the booking process at Stoughton, transporting the defendant to Brockton, and booking him again at the station there. Even before the Stoughton booking was completed after 4:40 P.M. , however, the courts were closed and arraignment was impossible until after the three-day Columbus Day weekend. See Siny Van Tran, 460 Mass. at 563 (delay not attributable to police where defendant's transportation resulted in late Friday night arrival "when he could not be arraigned until court was in session the following Monday").
The interview, moreover, was delayed for the benefit of the defendant. He specifically and repeatedly requested to speak to Detective Bell, who was home sick and initially reluctant to return to the station. Despite his illness, Detective Bell arrived to conduct the interview at the defendant's behest without further delay. Rather than coercing an unwilling suspect, the delay in this case was an accommodation for the defendant's voluntary request. Indeed, after he was informed that Detective Bell was unavailable, the defendant told Detective Persampieri, "[C]all him," which the detective promptly did. Despite all these unavoidable delays, nonetheless, the interview with Detective Bell began at approximately 8:15 P.M. , still within the six-hour window.
Considering the convergence of logistics, timing, and the unforeseen illness, this is an unusual case requiring flexibility, Siny Van Tran, 460 Mass. at 563, for reasons not attributable to the police, where "the six-hour period should be tolled appropriately." Rosario, 422 Mass. at 57. The defendant here was willing to be interviewed and was informed of his right to counsel. See McWilliams, 473 Mass. at 614 (Rosario rule intended to facilitate defendant's right to counsel). Indeed, the voluntary nature of the interview, made to accommodate-not undermine-his wishes, bolsters the finding that the admission in evidence of the defendant's statements does not violate "the spirit of the rule." Commonwealth v. Morganti, 455 Mass. 388, 400 (2009). See Siny Van Tran, supra (affirming denial of suppression did not "offend the spirit of Rosario"). The defendant, accordingly, is not entitled to a new trial under Rosario.
Judgments affirmed.
Orders denying motions for new trial and for postconviction discovery affirmed.

The bus driver was familiar with the defendant. The driver later served as an informant in unrelated Federal criminal investigations.

The defendant was previously convicted on all counts by a jury in 2005. Several volumes of transcript, however, could not be produced for appellate consideration and attempts to reconstruct the record were unsuccessful. Accordingly, a Superior Court judge ordered a new trial.

Regarding counsel's not requesting an identification instruction under Commonwealth v. Rodriguez, 378 Mass. 296 (1979), we see no error in the motion judge's conclusion that the Rodriguez instruction might have harmed the defendant by highlighting the reliability of the identification of the defendant from a photographic array. Avoiding that danger was not "manifestly unreasonable." Commonwealth v. Watson, 455 Mass. 246, 256 (2009), quoting from Commonwealth v. Martin, 427 Mass. 816, 822 (1998).

Detective Persampieri's testimony was inconsistent regarding whether it was the defendant or the detective who brought up the idea of the defendant's talking to Detective Bell. We discern no clear error in the motion judge's conclusion that Detective Persampieri, who was aware that Detective Bell and the defendant had a positive relationship, brought up the idea.