COMMONWEALTH vs. LUIS FERNANDO RIVERA, JR.

Hampden. November 7, 1996. - February 13, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & MARSHALL, JJ.

*Constitutional Law,* Admissions and confessions, Waiver of constitutional rights, Access to witness. *Evidence,* Admissions and confessions, Motive, Scientific test. *Practice, Criminal,* Access to witnesses, Fair trial, Argument by prosecutor, Instructions to jury, Judicial discretion, Capital case.

In a murder case, the judge's determination that the defendant had knowingly, willingly, and intelligently waived his Miranda rights and had thereafter voluntarily made incriminating statements was not clearly erroneous. [268-269]

In a criminal case, witnesses' insistence on the presence of a representative of the district attorney's office during any interviews with defense counsel was within their right and nothing in the record supported the defendant's claim that the Commonwealth impermissibly interfered with or hindered access to those witnesses. [269-272]

At the trial of murder indictments the judge did not err in admitting testimonial and physical evidence regarding a drug organization of which the defendant was not a member where the defendant's motive to kill the victims was inextricably linked to the drug organization; further, any chance of prejudice was minimized by the judge's instructions [272-273]; further, the prosecutor properly used the evidence in his closing argument [273-274].

At a murder trial the judge properly, within his discretion, declined to specifically instruct the jury regarding the failure of police to have conducted certain gunpowder residue tests. [274]

INDICTMENTS found and returned in the Superior Court Department on September 4, 1991.

A pretrial motion to suppress evidence was heard by *Daniel A. Ford,* J., and the case was tried before him.

*James A. Couture* for the defendant.

*Jane Davidson Montori,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. Convicted on two indictments charging murder in the first degree and on one indictment charging unlaw-

ful carrying of a firearm, the defendant, Luis Fernando Rivera, Jr., appeals claiming that (1) the judge improperly denied his motion to suppress; (2) the Commonwealth improperly interfered with his right to interview witnesses; (3) the judge erred in admitting evidence regarding a drug organization of which the defendant was not a member; (4) the prosecutor made improper prejudicial statements during his closing argument; and (5) the judge erred in refusing to instruct the jury regarding the Commonwealth's failure to test for gunpowder residue. The defendant also asks that we exercise our power under G. L. c. 278, § 33E, to order a new trial. We affirm the convictions and decline to exercise our power under § 33E in favor of the defendant.

The evidence in the light most favorable to the Commonwealth, *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985), showed that Pedro Ramos, the head of an extensive drug organization in Holyoke, ordered the killing of two persons to avenge wrongs which Ramos believed those persons had committed against him and his operation. One had assisted the police in the preparation for the execution of several search warrants which had led to the seizure of extensive physical evidence and to the arrest of Ramos and several other members of his drug organization.[1]

The evidence warranted the jurors' concluding that a member of Ramos's drug organization planned the murders and hired the defendant to carry out Ramos's order. The girl friend of one of the victims told police about an eyewitness, who, in turn, waived his Miranda rights and gave a detailed statement implicating the defendant and others in the murders. The police arrested the defendant based on this information. The eyewitness[2] said that he was ordered to drive the two victims, the defendant, and a codefendant, Iran Diaz,[3] to the scene of the murders. The eyewitness said that the victims were dragged from the vehicle, and that the defendant shot one victim in the chest. That victim died within

[1] These events ultimately led to the convictions of Ramos and several others for drug and firearms offenses. See *Commonwealth* v. *Alvarez*, 422 Mass. 198 (1996).

[2] The eyewitness testified that he was an unwilling participant who drove the vehicle on pain of threat to his and his family's safety.

[3] Diaz was tried separately and convicted on two indictments charging murder in the first degree and also of unlawfully carrying a firearm. See *Commonwealth* v. *Diaz*, 422 Mass. 269 (1996).

minutes. The other victim attempted to flee, and Diaz shot him in the back. The victim fell to the pavement but was still alive and trying to crawl away. The defendant alerted Diaz, and Diaz then shot the victim several times.

1. *Motion to suppress.* The defendant claims error in the denial of his motion to suppress a statement made to the police. He argues that the police improperly obtained the statement by questioning him after he had asserted his Miranda rights during the booking process.

At the hearing on the motion to suppress, the booking officer who had advised the defendant of the Miranda warnings initially said that he had asked the defendant if he understood the warnings and waived them. That officer initially said that the defendant replied in the negative. However, on recall, the officer testified that he had responded incorrectly because he had been confused about the questions. The officer then amended his testimony, stating that he never had asked the defendant about waiver, and therefore had marked "no" on the portion of the booking sheet regarding a Miranda waiver. That procedure was meant to indicate that the booking officer never obtained a waiver from the defendant. The officer explained that it is not the responsibility of booking officers to interrogate defendants or to ask them if they wish to make statements.

During the booking process, the defendant never asked for an attorney, the defendant was not questioned about the crimes for which he was arrested, and he did not make any statements about the crimes. After the booking process was completed, the defendant was placed into a cell. Three and one-half hours later, other police officers questioned the defendant and obtained the statement at issue. However, before any questioning ensued, these officers first administered a fresh set of Miranda warnings, and the defendant expressly waived his rights.

The motion judge found beyond a reasonable doubt that the defendant had knowingly, willingly, and intelligently waived the Miranda rights, and that the statement the defendant made after receiving Miranda warnings was voluntary. The judge credited the booking officer's amended testimony and found that the defendant did not assert his rights during the booking process. The defendant claims that the judge's determination was clearly erroneous in light of the discrepancy in the booking officer's testimony. We disagree.

"In reviewing a judge's determination regarding a knowing waiver of Miranda rights and voluntariness, we 'grant substantial deference to the judge's ultimate conclusions and we will not reject a judge's subsidiary findings if they are warranted by the evidence.' " *Commonwealth* v. *Shine*, 398 Mass. 641, 651 (1986), quoting *Commonwealth* v. *Benoit*, 389 Mass. 411, 419 (1983). The motion judge specifically determined that the booking officer's amended testimony and the explanation given for the discrepancy was "entirely credible." The question is clearly one of credibility for the finder of fact. We do not substitute our judgment for that of the fact finder. See *Commonwealth* v. *Mello*, 420 Mass. 375, 384 (1995).

The motion judge alternatively found that even if the defendant had invoked his rights during the booking process, in the totality of the circumstances, "the passage of time and the fresh set of Miranda warnings would be sufficient to create a valid waiver." We agree. As the judge correctly noted, there is no per se rule proscribing the resumption of questioning after a defendant has invoked his or her right to be free from interrogation. See *Michigan* v. *Mosley*, 423 U.S. 96, 102-103 (1975); *Commonwealth* v. *Watkins*, 375 Mass. 472, 479 (1978). The proper inquiry in such circumstances is whether the defendant's right to silence or to counsel, once invoked, was "scrupulously honored" before questioning resumed. *Mosley, supra* at 104. *Commonwealth* v. *Atkins*, 386 Mass. 593, 598 (1982). The motion judge was warranted in concluding that this requirement was satisfied because the booking officer never questioned the defendant, and other officers did so only after three and one-half hours had passed. Those officers had administered a fresh set of Miranda warnings, and the defendant had waived his rights in writing. See, e.g., *Commonwealth* v. *Santo*, 375 Mass. 299, 304 (1978). There was no error.

2. *Right to access to witnesses.* The defendant contends that the Commonwealth impermissibly interfered with his access to three witnesses who testified for the prosecution, thereby infringing on his right to prepare a defense and, in turn, his right to a fair trial. See *Commonwealth* v. *McMiller*, 29 Mass. App. Ct. 392, 407-409 (1990). For security purposes, the Commonwealth kept secret the addresses of its witnesses, including Pedro Figuero, Yolanda Reyes, and David Soto,

during the pendency of the trial.[4] Arrangements were made to afford the defendant's counsel and investigator the opportunity to communicate and talk with the witnesses by telephone through the district attorney's office.

When telephoned, Figuero told the defendant's investigator that he did not want to speak to defense counsel and the investigator. Reyes met with defense counsel in person at the district attorney's office and initially indicated that she was willing to speak to him and the investigator alone. However, after the prosecutor met privately with Reyes to explain her rights as a witness, Reyes then indicated that she wanted the prosecutor to attend the interview with her. Defense counsel refused to agree to these conditions and left the office without speaking to Reyes. Soto initially spoke to defense counsel over the telephone, answering some questions and refusing to answer others, but shortly after a brief interruption by the district attorney, Soto terminated the interview. We note that while under oath, Soto stated on the record that he was "through answering questions" when the district attorney entered the office.

At defense counsel's request, the trial judge engaged in a colloquy first with Reyes and then with Soto in accordance with *Commonwealth* v. *Carita*, 356 Mass. 132, 142-143 (1969). The judge clearly communicated to Reyes and Soto that defense counsel's wish was to interview them privately.[5] After the judge had advised them of their rights as witnesses, both

[4]On appeal, the defendant does not contest the denial of his motion to compel the production of the current addresses of the Commonwealth's witnesses. There is ample evidence in the record of threats to the safety of these and other witnesses to warrant the court's refusal to order the prosecution to reveal the addresses of its witnesses. See *Commonwealth* v. *Cobb*, 379 Mass. 456, 469-470, vacated on other grounds sub nom. *Massachusetts* v. *Hurley*, 449 U.S. 809 (1980), appeal dismissed, 382 Mass. 690 (1981).

[5][The judge to Reyes]: "You know I think that [the defendant's] investigator would prefer to speak to you alone because it may be that they want to ask you things that you don't want the other side to know about, so you know that's what they would prefer. Now again, I am not going to order you, I am not going to tell you what to do because it's your choice to make. If you spoke to [the prosecutor] by himself or the police by themselves it may be you might want to think about giving [defense counsel] the same courtesy. But again that is up to you, but I will let you decide what you prefer to do."

[The judge to Soto]: "Now, [defense counsel] has told me that he would like to have some time with you, just to speak with you before you testified. Now, [defense counsel] is working hard on behalf of his client to give him a

Reyes and Soto indicated that they were willing to speak with defense counsel and his investigator, but only in the presence of a representative of the district attorney's office. Defense counsel then conducted interviews of both witnesses in the presence of a representative of the district attorney's office.

It is clear that defendants are entitled as of right to access to witnesses who are in the custody of the Commonwealth. *Commonwealth* v. *Balliro,* 349 Mass. 505, 516 (1965). That right encompasses the opportunity for an interview. See *Commonwealth* v. *Campbell,* 378 Mass. 680, 699 (1979). Witnesses may grant or refuse an interview with defense counsel as they so choose. If they decide to let defense counsel interview them, they have "the right to impose reasonable conditions on the conduct of the interview." See G. L. c. 258B, § 3 (*m*).[6] We conclude that Reyes's and Soto's insistence on the presence of a representative of the district attorney's office was well within their right to impose reasonable conditions on the interviews.

Nothing in the record supports the defendant's claim that the Commonwealth impermissibly interfered with or hindered access to these witnesses. Contrast *McMiller, supra* at 407. Although the district attorney did interrupt a telephone call between Soto and defense counsel, the judge accepted the valid and reasonable explanation the district attorney gave on

very good defense and it would be something that he would appreciate, I'm sure, if you would agree to spend some time with him today talking with him, just the two of you . . . . Now, you don't have to do it. I am not going to order you to do it, but I think in fairness if you are going to speak to [the prosecutor] I am in favor of you speaking to [defense counsel] by himself if you would do that. Now, once again it isn't an order for you to do it, but I ask it because I think it would be fair then to do so for [defense counsel], for a few moments today to give him an interview in preparation for your testimony."

[6]General Laws c. 258B, § 3 (*m*), as appearing in St. 1995, c. 24, § 5, provides: "To provide victims a meaningful role in the criminal justice system, victims and witnesses of crime . . . shall be afforded the following basic and fundamental rights . . . (*m*) for victims and witnesses, to be informed of the right to submit to or decline an interview by defense counsel or anyone acting on the defendant's behalf, except when responding to lawful process, and, if the victim or witness decides to submit to an interview, the right to impose reasonable conditions on the conduct of the interview."

the record for the interruption.[7] Moreover, both the district attorney and the prosecutor later offered to arrange another opportunity for defense counsel to speak with Soto without interruptions. There is no basis for us to conclude the judge erred in his determination.

The defendant also alleges impropriety in the prosecutor's private meeting with Reyes to explain her rights, but the record indicates that the prosecutor's instructions to Reyes were in conformance with G. L. c. 258B, § 3 (*m*), and with S.J.C. Rule 3:08, PF 3 (b), as appearing in 382 Mass. 799 (1981).[8] The prosecutor did convey to Reyes his preference to be present at her interview with defense counsel. However, this comment does not rise to the level of hindering access to a witness. The prosecutor clearly explained to Reyes that she had the right to speak to defense counsel alone, and that defense counsel had the right to speak to her alone. It was her choice. Cf. *Commonwealth* v. *Doherty*, 353 Mass. 197, 211 (1967). There was no evidence to indicate that Reyes's decision was not of her own choosing. Further, in these circumstances, any potential for undue influence was removed by the judge's colloquy with Reyes and Soto.[9] See *Carita, supra* at 142-143.

3. *Admission of evidence regarding the drug organization.*

---

[7]The district attorney explained that he had not expected defense counsel to conduct the interview in his office where his private notes and materials were on his desk. Rather, the district attorney expected defense counsel to use the telephone in his office merely to determine whether Soto was willing to grant an interview, and, if so, the district attorney anticipated transferring the call to a private conference room for the interview. The record also indicates that, because of the length of the conversation in his office, the district attorney was concerned that threats were being made.

[8]Supreme Judicial Court Rule 3:08, PF 3 (b), as appearing in 382 Mass. 799 (1981), provides: "A prosecutor should not discourage or obstruct communication between prospective witnesses and defense counsel. It is unprofessional conduct for the prosecutor to advise any person or cause any person to be advised to decline to give to the defense information which he has the right to give. A prosecutor may properly inform such a person that he has no duty to submit to an interview or to answer questions propounded by defense counsel, and may advise him that, if he decides to talk to counsel for the defense and does so, he (except when responding to lawful process) may impose reasonable conditions, such as those designed to ensure his own safety and the accuracy of any recording of his statements."

[9]We note that the defendant never asked the judge to engage in a colloquy with Figuero pursuant to *Commonwealth* v. *Carita*, 356 Mass. 132, 142-143 (1969). In his brief, the defendant appears to make no specific

The defendant contends that the judge erred in admitting testimonial and physical evidence regarding Ramos's drug organization because the evidence went to Ramos's motive to kill the victims, and not to the defendant's motive. The defendant further argues that, where all parties acknowledged that the defendant was not a member of the drug organization, the judge should have excluded this motive evidence as prejudicial. The admission of this evidence was a proper exercise of the trial judge's discretion. See, e.g., *Commonwealth* v. *Dunn,* 407 Mass. 798, 807 (1990).

The Commonwealth's theory was that Ramos ordered the killings and the defendant was hired to carry out that order because the victims had allegedly informed the police of Ramos's drug organization, thereby causing the arrest of Ramos and the destruction of his operation. In these circumstances, the defendant's motive was inextricably linked to Ramos's motive for ordering the murders of the victims. See *Commonwealth* v. *Borodine,* 371 Mass. 1, 8 (1976), cert. denied, 429 U.S. 1049 (1977) ("if there is evidence of motive, that evidence is admissible"). The prosecution was entitled to present as full a picture as possible of the events surrounding the alleged crime itself. *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 269 (1982) ("[w]ithout the challenged evidence, the killing[s] could have appeared to the jury as an essentially inexplicable act of violence"). Moreover, the chance of prejudice was minimized by the prosecutor's repeated statements that the defendant was not a member of the drug organization, and by the judge's repetition of special cautionary instructions concerning proper use of the evidence. See *Commonwealth* v. *Valentin,* 420 Mass. 263, 270 (1995); *Dunn, supra* at 807.

4. *Closing argument.* The defendant also objects to the prosecutor's use of the evidence regarding Ramos's drug organization during closing argument. Because that evidence was admissible, see section 3, *supra,* the prosecutor was entitled to use it in argument. The prosecutor's remarks were grounded in the evidence and the fair inferences to be drawn therefrom, and therefore there was no error on this ground.

---

arguments regarding Figuero, other than that defense counsel was not provided unrestricted access to him. We reiterate that Figuero was within his rights as a witness to refuse defense counsel an interview. G. L. c. 258B, § 3 (*m*). See also *Commonwealth* v. *Doherty,* 353 Mass. 197, 210 (1967).

See *Commonwealth* v. *Marquetty,* 416 Mass 445, 450-451 (1993); *Commonwealth* v. *Paradise,* 405 Mass. 141, 152 (1989).

5. *Refusal to instruct.* The defendant argues that he was entitled to, but did not receive, a jury instruction that the jurors could consider in their analysis of the evidence the failure of the police to test for the presence of gunpowder residue on the hands of the defendant and other suspects arrested for the murders. The decision whether to instruct the jury regarding the failure of the police to conduct forensic tests lies within the discretion of the trial judge. *Commonwealth* v. *Cordle,* 412 Mass. 172, 177 (1992). See *Commonwealth* v. *Daye,* 411 Mass. 719, 740-741 (1992). The failure of the authorities to conduct certain tests is a permissible ground on which to build a defense. See *Commonwealth* v. *Bowden,* 379 Mass. 472, 485-486 (1980). However, unlike *Bowden,* the judge did not improperly remove this issue from the jury's consideration. The record establishes that the judge specifically permitted the defendant to argue the failure to test in his closing argument, and defense counsel did so. See *Cordle, supra* at 177 (it is the defense's job to argue to the jury the favorable inferences to be drawn from the deficiencies in police investigation). Contrast *Bowden, supra* (reversible error to instruct the jury not to consider lack of scientific tests).

Moreover, there was testimony that the gunpowder residue test was unavailable in the Commonwealth and that had it been available, it would have been unreliable due to the length of time that passed between the murders and the arrest of the defendant and other suspects. There is no evidence to indicate that the Commonwealth's failure to test was unreasonable or calculated to deprive the defendant of potentially exculpatory evidence. See *Cordle, supra* at 177. The judge's refusal to comment specifically on the failure of the police to conduct residue tests did not undermine the defense and was not an abuse of discretion. See *id.* at 178.

6. *G. L. c. 278, § 33E.* We have considered the entire record pursuant to our obligation under G. L. c. 278, § 33E, and conclude that the interests of justice do not require a new trial or the entry of a verdict of a lesser degree of guilt.

*Judgments affirmed.*