## COMMONWEALTH *vs.* VICTOR GIACOBBE.

No. 00-P-1107.

Middlesex. December 12, 2001. - September 27, 2002.

Present: BECK, SMITH, & DUFFLY, JJ.

*Witness,* Child. *Practice, Criminal,* Access to witnesses.

A criminal defendant failed to demonstrate that conditions imposed by a Superior Court judge on the defendant's pretrial interviews of two child witnesses (the children of the defendant and the victim) constituted improper prosecutorial interference with defense access to witnesses [149-150]; further, any argument that the defendant was prejudiced by the judge's failure to follow the procedure called for by *Commonwealth* v. *Carita,* 356 Mass. 132, 142-143 (1969), regarding the availability of witnesses, was waived by the defendant's failure to raise the issue at trial [150-151]; at any rate, the conditions imposed by the judge, which required the presence of a victim-witness advocate during the interviews and prohibited either parent from attending the interviews, were reasonable in the circumstances, and did not create a substantial risk of a miscarriage of justice, where the defendant's claim that the children's testimony had been unduly influenced by the victim (their mother) was addressed by defense counsel in closing argument and through vigorous and thorough cross-examination of the children and the victim [151-152].

INDICTMENTS found and returned in the Superior Court Department on September 4, 1997.

The cases were tried before *Martha B. Sosman,* J.

*Steven J. Rappaport* for the defendant.

*Amy E. Hamill,* Assistant District Attorney (*David W. Cunis,* Assistant District Attorney, with her) for the Commonwealth.

BECK, J. A Superior Court jury convicted the defendant of two counts of assault with intent to rape, four counts of indecent assault and battery, and one count of assault and battery, for two attacks on his former wife. (The trial judge allowed the defendant's motion for a required finding on a single count of rape, and one count of indecent assault and battery was

dismissed after trial as duplicative.) The couple's two sons, then ages six and eight, were nearby at the time of the assaults. When the Commonwealth gave notice of its intent to call the children as witnesses, the defendant sought to have defense counsel interview the children. On appeal, the defendant claims that the conditions imposed on these interviews deprived him of his State and Federal constitutional rights to a fair trial, to counsel, and to full and fair cross-examination. We affirm.

The relevant historical and procedural facts are these. The victim and the defendant had a turbulent relationship beginning soon after they met in 1985, through the time of their marriage in 1990, and their divorce in 1996. The Commonwealth's evidence was that there were sporadic incidents of physical abuse. In the summer of 1997, the defendant twice sexually assaulted the victim, once in June and a second time in August. The defendant was indicted in September, 1997, and arraigned the next month.

At the pretrial conference in December, the defendant filed a motion for disclosure of the names and addresses of Commonwealth witnesses. The Commonwealth's subsequent responses included as witnesses the victim, the detective assigned to the case, and up to three fresh complaint witnesses. According to defense counsel, when the Commonwealth had contacted him "to inquire whether counsel for the [defendant] would call the children as witnesses[,] [c]ounsel . . . informed [the prosecutor] that he was considering calling them only if necessary to establish the alibi defense [for] the June . . . incident." Shortly before trial in February, 1999, the names of the children appeared on the Commonwealth's list of witnesses for the first time.

The defendant received notice on February 18, 1999, of the possibility that the children would testify, when the prosecutor contacted defense counsel to inform him that she was planning to interview the children the next day. Defense counsel attempted to arrange his own interviews with the children for Saturday, February 20, 1999. Although there is some dispute about who had agreed to what, the effort to interview the children that day failed when the defendant showed up with defense counsel at the interview site (the district attorney's of-

fice) despite a restraining order that required the defendant to stay away from the victim. The victim insisted that the victim-witness advocate be present at the interview and that the defendant not be present. In consequence of these conditions, the interview did not take place.

On Monday, February 22, the first day of trial, the defendant filed a motion in limine to preclude the Commonwealth from calling the children or, in the alternative, to allow defense counsel to conduct a voir dire regarding the children's competency and ability to provide relevant testimony. The defendant asserted that the Commonwealth had "prevented reasonable access to the children."

At least in part in response to the defendant's motion, the judge met with both counsel in her lobby. During the lobby conference, counsel "discussed with [the judge] . . . their different views with regard to defense counsel's desire to interview the children." There is no transcript of this meeting. (We assume no court reporter or recording device was in the judge's lobby.)

On returning to the court room, the judge put the following information on the record. (It is not entirely clear to us which decisions had already been made and which were actually decided in open court.) The judge determined "that if defense counsel wishes to interview the children, . . . the children may have the victim/witness advocate present during that interview . . . so the victim/witness advocate, the witness and defense counsel alone will be the only people present. The defendant is not to be present, the complaining witness is not to be present, no other person from the [district attorney's] office is to be present." Defense counsel requested that the victim-witness advocate be ordered not to discuss the interview with third parties. The judge denied the request. She set out the role of the victim-witness advocate as follows:

> "The victim/witness advocate may not interfere with the interview while it's going on. Obviously, the children can terminate the interview. If one of the children decides I don't want to talk to you anymore . . . and perhaps turns to the victim/witness advocate for help to get them

out of there, . . . the victim/witness advocate can assist the child in terminating the interview, but otherwise the victim/witness advocate is certainly not to intervene or talk or suggest answers or coach or help the children or leave them alone, but the victim/witness advocate is not precluded from disclosing to others what is said.

"Counsel's interview with a witness is not privileged. Witnesses are free to talk to others about it as they wish and where the witnesses are minors and have another person present, that other person present may also . . . talk."

Defense counsel then asked the judge to exclude the children's testimony on grounds of the late disclosure. The judge responded that from looking at the file of the case, "the allegation that the children were banging at the door or physically present in the house was made clear from very early on." She ruled that given the children's ages it was "understandable . . . that the Commonwealth would wait . . . to see whether or not the children were old enough to and willing to actually testify in a court proceeding. So I do not see that there is any unfair surprise . . . [that] the Commonwealth has decided now that, yes, they are old enough and can go ahead and testify."

Counsel then asked for a voir dire to determine whether the boys were competent to testify and whether they had been subject to undue influence in the eighteen months since they had last seen their father. The judge told counsel that undue influence went to the weight of the evidence, not its admissibility. As to competence, the judge reserved a decision on that issue until after defense counsel had an opportunity to interview the children.

Defense counsel interviewed the children later that day. Before the boys testified two days later, the judge conducted a voir dire of each boy. Upon completion of the hearings, she ruled that the children were competent to testify. The boys were ten and nine at the time of trial.

On direct examination the older boy testified that on the day of the June incident the defendant told the boys to wait outside in the truck. When the boys tried to go back into the house, the

door was locked. From the sliding glass door the older son saw his parents come out of the bathroom.

In describing his observations on the day of the second assault, the older boy testified that his mother was "really a mess. Her hair was . . . messed up and her clothes were all wrinkled." She seemed nervous. The bed in the room where they had been was also "a mess."

On cross-examination, the older boy acknowledged that his mother had discussed the case with him "frequently since [he] found out . . . [he] was going to be testifying in court" a few weeks before. In fact she had asked him questions on matters to which he had just testified — what she looked like, what the bedroom looked like, if he had seen a car or a truck in the driveway, how long the defendant was in the house, whether anyone else was in the car. His mother did not tell him what had happened or what to say.

The younger boy also testified that the front door was locked on the morning of the first attack. He saw the defendant pulling his mother into the bathroom by her hand. His mother was trying to get away. He was "nervous and . . . scared of what was going on."

The younger boy's testimony regarding the day of the second assault was that he saw his parents in the hallway near the guest room in his grandmother's house. His mother's shirt was wrinkled and her hair was "messed up." The defendant went into the bathroom after he came out of the guest room. When the boy went into the bathroom, he saw that there was urine all over, on the floor and on the toilet seat. He cleaned it up so that his mother, who suffered from a chronic disease, would not have to "bend down or anything." On cross-examination, the younger son testified that he did not remember talking much with his mother about the events at issue. Both boys testified that their mother told them they were going to court because their father was going to call them to testify and that she thought it would be better if she called them.

In closing argument, defense counsel stressed that the victim's testimony that she had not talked to the children about the case was belied by the older boy's testimony that she had asked him about matters to which he had testified on direct examination.

Defense counsel pointed out that the victim "had sole control over [the] children from August of 1997 until today" and argued that her testimony was "conflicting . . . inaccurate . . . [and] incorrect." He suggested that the children's testimony was "tainted" by the victim's questions, and that the "facts [had been] burn[ed] into their memory [by the mother] over a period of eighteen months." He asked rhetorically whether the children had been "brainwashed."

*Discussion.* On appeal, the defendant argues that his ability to "discover the extent to which the children's memories and perceptions were their own was severely and unnecessarily impeded by . . . the prosecutor." He contends that "the record . . . demonstrates prosecutorial interference with [his] access to the child witnesses prior to trial" and that the trial court "unnecessar[ily] hind[ered] . . . [his] access to those witnesses once trial began" and failed to follow the procedures set out in *Commonwealth* v. *Carita*, 356 Mass. 132, 142-143 (1969). He further asserts that he was "entitled to a disinterested third person at the interviews [with his sons]." (Although he expresses dismay about the late notice that the boys would testify, the defendant does not argue that the judge abused her discretion in allowing them to do so. See *Commonwealth* v. *Manning*, 44 Mass. App. Ct. 695, 704 [1998].) We examine each of the defendant's arguments in turn.

At the outset, we note that contrary to the defendant's argument, the record does not demonstrate that the prosecutor interfered with defense access to the children. Rather, the record before us, lacking detailed reconstruction of the lobby conference, see *Arch Med. Assocs., Inc.* v. *Bartlett Health Enterprises, Inc.*, 32 Mass. App. Ct. 404, 406 (1992) (burden on the appellant in first instance to furnish record supporting his claims on appeal), suggests that it was the victim, the children's mother, who requested that the victim-witness advocate be present during the pretrial interviews. The defendant does not dispute the assertion in the prosecutor's affidavit to that effect. He merely denies that he agreed to the idea. The order itself came from the judge.

This is not a case in which the prosecution denied the defendant access to a witness, see *Commonwealth* v. *Balliro*,

349 Mass. 505, 515-516 (1965) (witnesses in custody; district attorney refused to permit interview); or in which the Commonwealth interfered with a defendant's access to a witness, see *Commonwealth* v. *McMiller*, 29 Mass. App. Ct. 392, 400-409 (1990) (prosecution first refused to disclose the witness's identity, and then once the witness had been identified in a newspaper article, refused to grant the witness the same testimonial privilege it had granted her a month before in another case). Compare *Commonwealth* v. *Rivera*, 424 Mass. 266, 271-272 (1997), cert. denied, 525 U.S. 934 (1998) (no impermissible interference where witness initially agreed to speak with defense counsel, but changed her mind after meeting privately with prosecutor and then refused to meet with counsel without a representative of the district attorney's office).

The defendant also asserts that "the trial judge . . . failed to follow the procedure called for by [*Commonwealth* v. *Carita*, 356 Mass. at 142-143]." *Carita* provides that when there is an issue as to a prosecution witness's availability, "the defence should . . . file a motion to be allowed to interview the witness. The witness should thereafter be brought to court and instructed on his or her rights to consent or not to consent to an interview. A record should be kept of the proceedings." *Ibid.* More recently, the Legislature established that a witness has the right "to be informed of the right to submit to or decline an interview by defense counsel or anyone acting on the defendant's behalf, except when responding to lawful process, and, if the . . . witness decides to submit to an interview, the right to impose reasonable conditions on the conduct of the interview." G. L. c. 258B, § 3(*m*), inserted by St. 1995, c. 24, § 5.

Clearly there are special concerns when children are called upon to testify. Here, the defendant may be given credit for taking the first step in invoking the procedure set out in *Commonwealth* v. *Carita*, *supra*, by filing the motion in limine. However, at least on the record before us, he did not ask that the children or their mother be brought before the court to explain the children's rights as witnesses. Nor did he raise the possibility of designating a neutral third party rather than the victim-witness advocate to attend the interviews. These issues are therefore waived, subject only to a finding of error that cre-

ated a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). Even were we to determine that the judge somehow erred in failing "to take the matter in charge [herself]," *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 659 (1979), any error did not create such a risk.

The conditions the judge established were reasonable under the circumstances. At the least, they did not create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Rivera*, 424 Mass. at 271 (witnesses' insistence on presence of representative of district attorney's office well within their rights to impose reasonable conditions on the interviews). Cf. *Commonwealth* v. *Campbell*, 378 Mass. 680, 700 (1979) (requirement that correction officer be positioned outside open door of interview room reasonable where witness was inmate who had previously escaped from custody). While the designation of a neutral third party has a certain appeal, aside from the defendant's failure to request such a person, the judge reasonably could have believed that the victim-witness advocate was familiar with the case and that she could help the children understand and tolerate the required court procedures. The condition that neither of the children's parents be present also makes sense. See generally *Opinion of the Justices to the Senate*, 427 Mass. 1201, 1203 (1998) (children who witness or experience domestic violence suffer "deep and profound harms"). As the Commonwealth points out, there is nothing in the record to suggest that the victim-witness advocate overstepped her limited role, disclosed the content of the interviews to the prosecutor or anyone else in the district attorney's office, or otherwise interfered with the defendant's access to the children.

We are mindful that "we should be wary of concluding too readily that a defendant did not suffer prejudice" when trying to trace the effects of a failure to follow the procedure set out in *Carita. Commonwealth* v. *St. Pierre*, 377 Mass. at 659. The defendant claims "prejudice was inherent" in this case. After asserting a litany of accusations leading to the conclusion that the victim had "poisoned the well against the defendant," without citation to the record, the defendant asserts that "it is

important to know circumstances such as how many times the children were questioned, what is the hypothesis of the questioner, what is the motivation of the questioner to distort the children's recollection through suggestion or coaching," citing *United States* v. *Rouse*, 100 F.3d 560, 572-574 (8th Cir. 1996), a case involving sexual assaults on children who were subjected to coercive questioning by agency professionals, which is not relevant here. Defense counsel raised the questions set out above in his cross-examination of the victim and the children, and in closing argument. His cross-examination of the children was vigorous and effective on the subject of their conversations with their mother and in establishing the discrepancies in the victim's testimony. He had ample opportunity to cross-examine the victim (although he does not seem to have requested a pretrial interview), including the matter of the child support payments and the inquiries of the Department of Revenue. That the jury nevertheless found the defendant guilty does not appear to be the result of the interview limitations of which the defendant complains. Cf. *Commonwealth* v. *Allen*, 40 Mass. App. Ct. 458, 462-463 (1996) ("pretrial taint hearing" not necessary when defendant's offer of proof does not reach certain threshold). Defense counsel properly addressed his arguments about the victim's credibility to the jury. See *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 411 (1978).

"[A]n examination of the whole record . . . [reveals that the children, although nearby,] were not eyewitnesses [to the sexual assaults] . . . [and] [t]he cross-examination of [them] appears to have been thorough." *Commonwealth* v. *St. Pierre*, 377 Mass. at 659-660. "Thus we hold that any prejudice was minimal and any error not a ground for reversal." *Id.* at 660. The judgments are therefore affirmed.

*So ordered.*