**Luis RIVERA**

v.

**David NOLAN.**

**Civil Action No. 04–12717–RGS.**

United States District Court,
D. Massachusetts.

Feb. 9, 2009.

**164**

Luis Rivera, Norfolk, MA, pro se.

Maura D. McLaughlin, Susanne G. Reardon, Office of the Attorney General, Boston, MA, for David Nolan.

## ORDER ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

STEARNS, District Judge.

As I agree with Magistrate Judge Collings' thoughtful Report, I will adopt his Recommendation and DISMISS the petition with prejudice. The Petition falls squarely within the broad class of recantation claims that, as Magistrate Judge Collings notes, are treated (for good reason) with skepticism. See *United States v. Connolly*, 504 F.3d 206, 214 (1st Cir.2007). It is not clear whether the accusations of conflict of interest on the part of the state judges who ruled on various aspects of Petitioner's case (which figure heavily in the Objection) were raised before the Magistrate Judge. This is not, however, a matter of significance, as the accusations are totally lacking in substance. The Clerk will enter judgment for the Respondent and close the case.

SO ORDERED.

## REPORT AND RECOMMENDATION ON PETITIONER LUIS RIVERA'S PETITION FOR WRIT OF HABEAS CORPUS (# 1)

COLLINGS, United States Magistrate Judge.

### I. Introduction

*Pro se* petitioner Luis Rivera ("Rivera" or "petitioner") petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(# 1) on the grounds that his murder conviction in Massachusetts state court was obtained by means of the perjured testimony of the state's key witness, and that the prosecution failed to disclose inducements for this witness's testimony in violation of *Brady v. Maryland*, 373 U.S.

83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[1] Rivera was convicted in 1992 in Massachusetts state court of two counts of first-degree murder and one count of unlawful possession of a firearm, and is currently serving two natural life sentences in state prison.

Rivera filed his section 2254 petition on December 28, 2004. The district court (Lindsay, D.J.) dismissed the petition in its entirety as time barred. Rivera appealed and the First Circuit Court of Appeals remanded with instructions to consider the timeliness of Rivera's *Brady* claim[2] (Ground 4 of the petition). This Court determined that the *Brady* claim was timely presented, and directed the parties to argue the merits of the claim. On April 7, 2008, Rivera filed his Memorandum of Law in Support of Application for Writ of Habeas Corpus (Pursuant to, [sic] 28 U.S.C. sec. 2254) with accompanying exhibits (# 37); the respondent filed a Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus with accompanying exhibits (# 40).[3] Rivera has filed a Traverse to the Respondent's Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus (# 39). The petition is therefore ripe for disposition. For the reasons set out below, the Court recommends denying the petition.

## II. Background

The Massachusetts Supreme Judicial Court recounted the facts leading to Rivera's conviction as follows:

Pedro Ramos, the head of an extensive drug organization in Holyoke, ordered the killing of two persons [Angel Carcano and Guillermo Santiago] to avenge wrongs which Ramos believed those persons had committed against him and his operation. One had assisted the police in the preparation for the execution of several search warrants which had led to the seizure of extensive physical evidence and to the arrest of Ramos and several other members of his drug organization.

---

1. The petitioner has also filed a motion for appointment of counsel (# 35), which the Court denied in a separate order, having concluded that the "interests of justice" do not so require. 18 U.S.C. § 3006A(a)(2)(B). First, the Court determines that the single issue presented in Rivera's petition is not meritorious. In addition, Rivera has competently represented his interests *pro se,* including successfully pursuing a certificate of appealability in the First Circuit Court of Appeals. *See generally Lucien v. Spencer,* 534 F.Supp.2d 207, 209 (D.Mass.2008) (noting that "the capability of the indigent litigant to present the case" is among the considerations in deciding whether to appoint counsel) (internal quotations and citation omitted). Furthermore, Rivera presented his habeas claim in his motion for a new trial in Massachusetts state court, and so "the procedural posture of this case … militates against the appointment of counsel." *Id.* at 210(noting that "[w]hen a petitioner can find the information necessary to support his claims in prior court filings, appointment of counsel is typically not appropriate.").

2. As this Court noted previously, Rivera conceded in his application for a certificate of appealability before the First Circuit (No. 05–2418) that Claims 1–3 of his petition were untimely, and so Rivera has expressly waived those claims. *See Rivera v. Nolan,* 538 F.Supp.2d 429, 430 & n. 3 (D.Mass.2008).

3. Rivera has filed a Motion to Strike Defendant's Opposition as Late Pursuant to Fed. R.Civ.P. 12(f) with Objections (# 42), and the respondent has filed an Opposition to Petitioner's Motion to Strike Respondent's Memorandum of Law Opposing the Merits of his Application for a Writ of Habeas Corpus (# 44). The Court denied Rivera's motion to strike in a separate order as the record makes plain that Rivera received a hard copy of the respondent's memorandum and responded to it in his Traverse. Rivera, thus, suffered no prejudice by what respondent says was a glitch in the electronic filing system.

The evidence warranted the jurors' concluding that a member of Ramos's drug organization planned the murders and hired the defendant to carry out Ramos's order. The girl friend of one of the victims told police about an eyewitness, who, in turn, waived his Miranda rights and gave a detailed statement implicating the defendant and others in the murders. The police arrested the defendant based on this information. The eyewitness said that he was ordered to drive the two victims, the defendant, and a co-defendant, Iran Diaz, to the scene of the murders. The eyewitness said that the victims were dragged from the vehicle, and that the defendant shot one victim in the chest. That victim died within minutes. The other victim attempted to flee, and Diaz shot him in the back. The victim fell to the pavement but was still alive and trying to crawl away. The defendant alerted Diaz, and Diaz then shot the victim several times.

*Commonwealth v. Rivera,* 424 Mass. 266, 267–268, 675 N.E.2d 791, 793–794 (1997) (footnotes omitted), *cert. denied,* 525 U.S. 934, 119 S.Ct. 346, 142 L.Ed.2d 285 (1998). The eyewitness described above was Jose Pacheco ("Pacheco").

The record establishes that Pacheco was originally indicted as a co-defendant in the two murders. (# 37, Exh. 6 at 1–9) At Rivera's trial, and at that of Rivera's co-defendants,[4] Pacheco "testified that he was an unwilling participant who drove the vehicle on pain of threat to his and his family's safety." *Rivera,* 424 Mass. at 267 n. 2, 675 N.E.2d at 793 n. 2. Rivera's trial ended in conviction on June 29, 1992. (# 1 at 1) Four days later, on July 2, 1992, Pacheco was released on bail reduced from $500,000 to $75,000 personal surety. (# 37,

Exh. 6 at 2) On February 22, 1993, Pacheco's court-appointed attorney, Charles Stephenson, moved to dismiss the indictments against Pacheco on the theory that Pacheco was acting under duress when he participated in the murders. (# 37, Exh. 9 at 4) The murder indictments against Pacheco were ordered dismissed on June 1, 1993. (# 37, Exh. 6 at 1, 4)

Since then, Pacheco has been arrested on unrelated charges and is currently incarcerated in the Massachusetts prison system. (*See* # 37, Exh. 6, *Commonwealth v. Rebello,* Memorandum of Decision, at 14 [hereafter *Rebello* Decision] (citing *Commonwealth v. Pacheco,* 62 Mass.App.Ct. 1114, 819 N.E.2d 195 (2004) (unpublished table decision))). While incarcerated, Pacheco executed three affidavits in which he recanted his trial testimony. In an affidavit dated September 15, 2002, Pacheco says that he never accompanied Rivera to the crime scene, that Rivera never held a gun to his head while Pacheco was driving, and that he never witnessed Rivera shoot Angel Carcano and Guillermo Santiago at the crime scene. (# 37, Exh. 1 at 2–3, ¶¶ 2–4) Instead, he avers that the defendant dropped him off at his mother's house in Holyoke prior to the time of the murder. (# 37, Exh. 1 at 2, ¶ 4) In an affidavit dated May 16, 2003, Pacheco further avers that although he testified at trial that he did not get a deal or promises for his testimony against Rivera, in fact he had a verbal agreement with ADA Howard Safford that after testifying against Rivera he "would be released on low bail and would not face prosecution." (# 37, Exh. 1 at 3, ¶ 2) He executed a third affidavit on October 7, 2003, which reiterates the contents of the two previous affidavits.

4. In all, Pacheco testified against defendants in five trials, each time stating that he had acted unwillingly in participating in the murders.

On the basis of Pacheco's affidavits, Rivera filed a motion for a new trial in state court, arguing, *inter alia,* that a new trial was warranted because "the main state witness reveal[ed] previously undisclosed and concealed deals while recanting his perjured trial testimony." (# 37, Exh. 7 at 3) The state trial court judge denied the motion in a margin entry as follows:

I have a fairly clear memory of the witness Jose Pacheco's testimony, having heard it twice—both at the time of this trial and at the trial of a co-defendant, Iran Diaz. I simply do not believe his alleged recantation, having given the matter serious consideration. See *Commonwealth v. Raymond,* 424 Mass. 382, 397 [676 N.E.2d 824] (1997). The other allegations herein do not raise a substantial issue requiring an evidentiary hearing. Therefore, the motion is *Denied* without a hearing.

# 37, Exh. 7 at 2.

Rivera filed an application for review pursuant to Mass. Gen. L. ch. 278, § 33E, which a single justice of the SJC denied on December 14, 2004. (*See* # 1 ¶ 11(b)(6)) Pacheco's affidavits recanting his trial testimony have now become the focal point of Rivera's remaining habeas claim.

### III. Analysis

#### A. Standard of Review

"[A] federal court may not issue a habeas petition 'with respect to any claim that was adjudicated on the merits in State court proceedings' unless the state court decision: 1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *McCambridge v. Hall,* 303 F.3d 24, 34 (1st Cir.2002) (*en banc*) (quoting 28 U.S.C. § 2254(d) (Supp. II 1996)).

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision represents an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. An "unreasonable application" requires "some increment of incorrectness beyond error.... The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *McCambridge,* 303 F.3d at 36 (internal quotations and citation omitted).

In his motion for a new trial in state court, Rivera claimed that the state prosecutor knowingly allowed Pacheco to give false testimony at Rivera's trial, and failed to disclose a deal that he had offered to Pacheco in exchange for Pacheco's testimony against Rivera. The state trial court rejected both contentions on the merits, essentially rejecting Pacheco's recantation as not credible. Rivera appears to agree that AEDPA's deferential standard of review governs the Court's analysis of his *Brady* claims. *Cf. López v. Massachusetts,* 480 F.3d 591, 594 (1st Cir.) (that state courts did not "phrase their grounds for rejecting a new trial in traditional *Brady* terms" does not "necessarily preclude [] deference"), *cert. denied,* —— U.S. ——, 128 S.Ct. 171, 169 L.Ed.2d 116 (2007), and cases cited. The Court thus considers

Rivera's *Brady* claim under AEDPA's deferential standard of review.

### B.  The Merits

■ The clearly established federal standard at issue here has been set out in *Brady* and its progeny.  Under *Brady,* the prosecution is obligated to disclose all material evidence favorable to the defendant, including both exculpatory and impeachment evidence.  *See Kyles v. Whitley,* 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *see also López,* 480 F.3d at 594.  Impeachment evidence includes promises that the prosecution has made to key witnesses in exchange for their testimony.  *See Giglio v. United States,* 405 U.S. 150, 154–55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).  The well-established elements of a *Brady* claim are:

> The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;  that evidence must have been suppressed by the State, either willfully or inadvertently;  and prejudice must have ensued.

*Strickler v. Greene,* 527 U.S. 263, 281–282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *see also United States v. Avilés–Colón,* 536 F.3d 1, 19 (1st Cir.), *cert. denied,* —— U.S. ——, 129 S.Ct. 615, 172 L.Ed.2d 470 (2008).

Because there is no question here that the applicable law is clearly established, the issue is whether the state trial court unreasonably applied that law to the facts of Rivera's case, or whether the state trial court made "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d)(2).

As the basis for his *Brady* claim, Rivera contends that "[t]he conviction was unlawfully obtained by the prosecution's knowing and deliberate presentation of false testimony and concealment of exculpatory evidence." (# 1, Attachment at 4).  Rivera elaborates the factual basis of his claim as follows:

> Because the prosecutor knowingly and deliberately presented false testimony to the jury and concealed evidence that was clearly exculpatory in nature (i.e. a bail release deal with the key prosecution witness who was a co-defendant in the case), the convictions at issue were unlawfully obtained in violation of rights secured to petitioner by the Fourteenth Amendment to the United States Constitution....

# 1, Attachment at 4.

The claim thus has two parts: first, that the prosecution failed to disclose inducements that it made in exchange for Pacheco's testimony; and second, that the prosecution knew that Pacheco's testimony was false, and so suborned his perjury.  The Court considers these claims *seriatim.*

### 1.  Claim of Inducements to Testify

■ Rivera asserts a *Brady* violation based on allegations that the prosecution failed to disclose impeachment materials concerning its key witness, *viz.,* that the prosecution had struck a "bail release" deal with Pacheco prior to Pacheco's testimony, and that it offered Pacheco immunity from prosecution in exchange for his testimony.[5]  Pacheco was unquestionably

---

5.  In his Traverse, Rivera also suggests that the *Brady* doctrine was violated because the prosecution failed to disclose that Pacheco's attorney rejected the district attorney's offer of a plea of second-degree murder. (# 39 at 3) Putting aside that Rivera raises this conten-

tion for the first time in his reply, the record also establishes that Pacheco's attorney did not consider the offer serious, and that the prosecutor presented it in a "dismissive fashion." (# 37, Exh. 10 at 109) Even assuming the prosecution had a duty to disclose this

an essential witness at Rivera's trial. Under governing Supreme Court precedent, his "credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury [would have been] entitled to know of it." *Giglio*, 405 U.S. at 154–55, 92 S.Ct. 763. Pacheco testified at trial that he hoped for "consideration" from the prosecution in exchange for his cooperation, but that otherwise the prosecution had offered no other deals in exchange for his testimony. (*See* # 45, Transcripts of State Court Proceedings, Tab 8 at 152–153; # 37, Exh. 10 at 47) Rivera now points to Pacheco's affidavits, in which Pacheco claims that in fact he had a verbal agreement with the prosecution that after testifying against Rivera he "would be released on low bail and would not face prosecution." (# 37, Exh. 1 at 3, ¶ 2)

As noted, the state court rejected Pacheco's recantations as not credible. The Court notes that Superior Court Justice Ford presided over both the bail reduction hearing for Pacheco, (*see* # 37, Exh. 6 at 2 [Docket Sheet for Jose Pacheco, entry dated July 2, 1992] ), Rivera's trial, and the trial of Rivera's codefendant, Iran Diaz. Thus, the state court judge would have had a unique vantage point in assessing the reliability of Pacheco's averments, having heard Pacheco's recital of events, under cross-examination, twice before. Under these circumstances, the state trial court's finding on Pacheco's credibility is entitled to a presumption of correctness, and "the petitioner bears the burden of disproving factual findings by 'clear and convincing evidence.'" *McCambridge*, 303 F.3d at 35 (quoting 28 U.S.C.

§ 2254(e)(1)). *See also Thompson v. Keohane*, 516 U.S. 99, 111, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (interpreting pre-AEDPA revision of habeas statute, and noting that the Supreme Court has classified as "factual issues" those whose "resolution depends heavily on the trial court's appraisal of witness credibility and demeanor"); *Coombs v. State of Maine*, 202 F.3d 14, 18 (1st Cir.2000) (" 'factual issues' are defined as basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators") (internal quotations and citation omitted). Rivera thus faces a high hurdle, not only because "[i]t is well established that recantations are generally viewed with considerable skepticism," *United States v. Connolly*, 504 F.3d 206, 214 (1st Cir.2007) (internal quotations and citation omitted), *cert. denied*, — U.S. ——, 128 S.Ct. 1689, 170 L.Ed.2d 359 (2008), but also because Rivera must convince a federal habeas court that the state trial court unreasonably declined to credit Pacheco's affidavits, despite that court's intimate familiarity with the particulars of the events in question.

In an effort to rebut the state trial court's determination, Rivera presents (in addition to Pacheco's affidavits) the following evidence: 1) the affidavit of Francis Pabon, who was incarcerated for a time with Pacheco (# 37, Exh. 2); 2) the affidavit of Charles Stephenson, who was Pacheco's court-appointed attorney (# 37, Exh. 3); 3) Pacheco's state criminal docket sheets, which reveal that Pacheco was released on low bail after Rivera's trial concluded (# 37, Exh. 6); and 4) a copy of Stephenson's Motion to Dismiss the Indictments against Pacheco, which was ultimately granted (# 37, Exh. 9). In addi-

half-hearted offer, it seems inconceivable that this information would have affected the jury's assessment of Pacheco's credibility, because the jury knew that Pacheco was under indictment for first-degree murder.

tion, Pacheco's affidavits also became the basis of a motion for a new trial in the separate case of one of Rivera's co-conspirators, Raymond Rebello ("Rebello"). From Rebello's case, Rivera has also presented a transcript of an evidentiary hearing conducted on January 25, 2005, before Massachusetts Superior Court Justice Sweeney in connection with Rebello's motion for a new trial (# 37, Exh. 10), and the resulting *Rebello* Decision, denying Rebello's motion for a new trial (# 37, Exh. 6)[6].

■ Having reviewed Pacheco's submissions, the Court concludes that the evidence Rivera presents either works against or fails to substantiate Rivera's claim that the prosecution promised Pacheco that he would be released on low bail, or guaranteed immunity from prosecution. At most, Rivera has established through Pacheco's state court docket sheets that Pacheco was in fact released on substantially reduced bail within a week of testifying at Rivera's trial. But the fact that Pacheco ultimately received consideration does not establish by clear and convincing evidence that the prosecution had struck a deal with Pacheco before Pacheco testified, or that Pacheco's release was other than the "consideration" for which Pacheco had hoped. *Cf. Shabazz v. Artuz*, 336 F.3d 154, 165 (2nd Cir.2003) (holding that "the fact that a prosecutor afforded favorable treatment to a government witness, standing alone, does not establish the existence of an underlying promise of leniency in exchange for testimony") (footnote omitted); *see also Bell v. Bell*, 512 F.3d 223, 234 (6th Cir.) (*en banc*) ("although we do not take issue with the principle that the prosecution must disclose a tacit agreement between the prosecution and a witness, it is not the case that, if the

government chooses to provide assistance to a witness following a trial, a court must necessarily infer a preexisting deal subject to disclosure under *Brady* "), *cert. denied*, —— U.S. ——, 129 S.Ct. 114, 172 L.Ed.2d 35 (2008). The state trial judge declined, in any event, to draw such an inference, and the Court cannot say that this refusal was unreasonable.

■ The additional evidence on which Rivera relies does not help. The affidavit of Francis Pabon ("Pabon") is, in its relevant parts, hearsay, and the state court could easily have refused to credit this hearsay jailhouse statement. *Cf. Connolly*, 504 F.3d at 215 ("recantation, like many jailhouse recantations, lacked any meaningful indicia of reliability and, therefore, was properly regarded as highly suspicious") (internal quotations and citation omitted) (and cases cited); *see also Herrera v. Collins*, 506 U.S. 390, 417, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (noting that habeas petitioner's affidavits were "particularly suspect in this regard because ... they consist of hearsay"). Pabon avers that he and Pacheco were jailed together in 1991, and that Pacheco told him that ADA Safford coached Pacheco, and urged him to lie on the stand. The government notes that even Pacheco's own affidavits do not contend as much, and no other credible evidence supports this contention. Even if the Court "relaxes" the hearsay rule, as Rivera suggests, (*see* # 39 at 6), the state court considered Pabon's affidavit in resolving the claim, and in view of the other evidence in the record, Pabon's affidavit, the reliability of which is questionable, falls well short of the clear and convincing evidence that would suffice to disturb the state court's determination.

---

**6.** That decision was affirmed in *Commonwealth v. Rebello*, 450 Mass. 118, 876 N.E.2d 851 (2007); the SJC recounts most of the

evidence and facts presented at the hearing on which Rivera relies in its decision in *Rebello*.

Rivera also proffers the evidentiary hearing conducted before Superior Court Justice Sweeney in the *Rebello* case, and the resulting decision. Rivera does not explain how this evidence is favorable to his cause, other than to note that the "affidavit warranted and received judicial recognition at the Evidentiary [sic] hearing of Raymond Rebello." (# 37 at 7) But far from buttressing Rivera's challenge, this evidence only supports the result in Rivera's case because Justice Sweeney likewise rejected as incredible Pacheco's recantation of his trial testimony at the evidentiary hearing. (*See* # 37, Exh. 6, *Rebello* Decision at 14 stating "I firmly reject Mr. Pacheco's testimony offered during the evidentiary hearing that he had no involvement in the murders.")

Indeed, as the respondent notes, Pacheco's testimony at the *Rebello* evidentiary hearing accords with Pacheco's testimony at Rivera's trial, *viz.*, that the prosecution had promised Pacheco "consideration," and nothing more. Pacheco as much as repudiates his statement in the affidavit that he had an agreement with the prosecution to be released on low bail and that he would not face prosecution.[7] Finally, the transcript also suggests a possible motive for Pacheco's preparing the affidavit: he testified at the hearing that upon his incarceration for a different crime, he was housed in the same state prison as Rivera. (# 37, Exh. 10 at 50) *Cf. Connolly,* 504 F.3d at 215 (*Brady* inquiry can take into consideration "the witness's incentives for recantation given the risk that [he] might meet the defendant in the future") (internal quotation marks and citation omitted) (and cases cited).

Furthermore, Justice Sweeney found "highly credible the testimony of Attorney Charles Stephenson and Hampden County Assistant District Attorney Howard Safford regarding the facts and circumstances leading to the dismissal of the Pacheco indictments." (# 37, Exh. 6, *Rebello* Decision at 11) Stephenson, Pacheco's court-appointed attorney throughout the five trials, testified at this hearing,[8] *inter alia,* that Pacheco was offered only "consideration," (# 37, Exh. 10 at 114), and that the prosecution never agreed to dismiss the indictments against Pacheco. (# 37, Exh.

7. In part, that testimony (# 37, Exh. 10 at 45–47) reads:
[ADA]:[D]o you recall that there was discussions as to whether you would cooperate in the cases against all of these men against Diaz and Rebello and the others, is that right?
[Pacheco]: That's correct.
Q: You said you would cooperate, didn't you?
A: That is right.
Q: And Mr. Safford told you in exchange for your cooperation you would get consideration, isn't that right?
A: That's correct.
Q. And that's all he ever told you in terms of what you would get?
A: Verbally, yes, sir.
Q: Is that right?
A: Verbally, yes, sir.
Q: Verbally. The only thing Mr. Safford told you is that the Commonwealth would take your cooperation into consideration in deciding what to do with your case, correct?
A: That's correct.
Q: So you didn't know what was going to happen to your case, is that correct?
A: That's correct.
Q: You said even here today, even after you testified in all the cases, when you were done testifying, you still didn't know what was going to happen to your case, right?
A: That's correct, yeah.

8. Rivera presents an affidavit by Stephenson dated October 29, 2004. Stephenson testified in January 2005, after Pacheco waived his attorney-client privilege, at the hearing in connection with Rebello's motion for a new trial. While the Court has not disregarded the affidavit, the testimony is far more probative. In any event, the affidavit accords with Stephenson's testimony in its relevant parts.

10 at 116, 122) ADA Safford testified, *inter alia,* that he assumed throughout the five trials that he would try Pacheco (# 37, Exh. 10 at 137), and that the decision to release Pacheco on bail was made only after the Rivera trial had ended. (# 37, Exh. 10 at 147)

In sum, nothing in this evidence presents sufficient reason to disturb the trial court's credibility determination, and its rejection of Rivera's *Brady* claim, and the Court concludes that the state court's decision did not result in an unreasonable application of the *Brady* standard.

### 2.  Suborning perjury

■ To the extent that Rivera also contends that the prosecution suborned Pacheco's perjury,[9] the claim can be easily dispatched, principally for the reasons cited above: Rivera offers no credible evidence that Pacheco's trial testimony was perjured. It follows that the state court would not have unreasonably applied *Brady* in rejecting Rivera's contention that "the prosecutor knowingly and deliberately presented false testimony." (# 1, Attachment at 4) Rather, the record establishes that Pacheco gave a statement to the police within five or six hours after the incident, (*see* # 45, Tab 6 at 10–14; # 37, Exh. 10 at 100), that was consistent with his trial testimony throughout five trials. (# 37, Exh. 10 at 119) The state court concluded that Pacheco's trial testimony was credible. So, again, the record evidence wholly undercuts Rivera's claim for habeas relief.[10]

### IV.  Recommendation

For all of these reasons, I RECOMMEND that Petitioner Luis Rivera's Petition for Writ of Habeas Corpus (# 1) be DENIED and that judgment enter DISMISSING this cause.

### V.  Review by the District Judge

The parties are hereby advised that pursuant to Rule 72, Fed.R.Civ.P., any party who objects to this recommendation must file a specific written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed.R.Civ.P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services,* 848 F.2d 271 (1st Cir.1988); *United States v. Emiliano Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

---

9. "Although the Supreme Court has not established the exact standard of review where the government suborns perjury, the First Circuit treats such actions like a *Brady* violation...." *Perkins v. Russo,* 02–10460, 2007 WL 2507741, *7 (D.Mass. Aug. 31, 2007) (citing *United States v. González–González,* 258 F.3d 16, 21 (1st Cir.2001)); *see also Kyles,* 514 U.S. at 433, 115 S.Ct. 1555 (*Brady* violation may arise where "previously undisclosed

evidence revealed that the prosecution introduced trial testimony that it knew or should have known was perjured").

10. The respondent points out that Pabon's affidavit alone supports the contention that the police "coached" Pacheco to testify falsely. Pabon's affidavit is hardly enough to overcome the weight of the other evidence.